**TRAVELERS INDEMNITY CO.**

v.

**ALLIED–SIGNAL, INC.**

**Civ. No. JFM–88–99.**

United States District Court,
D. Maryland.

June 20, 1989.

Supplemental Memorandum Aug. 4, 1989.

See also 124 F.R.D. 101.

James P. Ulwick, Kramon & Graham, P.A., Baltimore, Md., Barry R. Ostrager, Simpson, Thacher & Bartlett, New York City, and Robert H. Sand, Asst. General Counsel, Allied Corp., Morristown, N.J., for plaintiff.

Rudolph L. Rose, Semmes, Bowen & Semmes, Baltimore, Md., and Lester O. Brown and Arthur S. Olick, Anderson, Kill, Olick & Oshinsky, P.C., New York City, for defendant.

**MEMORANDUM**

MOTZ, District Judge.

The Travelers Indemnity Company has brought this action against Allied–Signal, Inc. seeking a declaration that it has no duty to provide insurance coverage to Allied for pollution-related clean-up costs under a series of policies issued by Travelers to Allied from 1951 to 1988. Allied has filed counterclaims for declaratory relief, breach of contract, "bad faith" and breach of fiduciary duty.

On April 22, 1988, this Court denied a motion filed by Allied to stay this action pending resolution of a declaratory judgment action filed by Allied in the Superior Court of New Jersey, Morris County, against all one hundred seventy-six of its insurance carriers seeking a determination of the scope of its pollution coverage. The basis for this ruling was a concern that, in

light of the sheer magnitude of the New Jersey litigation and the foreseeable possibility that the New Jersey court would ultimately decline to provide declaratory relief as to non-New Jersey sites, resolution of the issues here presented would be inordinately delayed if the stay were granted.

Discovery has now been completed on general coverage issues, such as the history of the policy negotiations between the parties and the pattern of Travelers' payment of claims under allegedly comparable circumstances.[1] The parties have cross-moved for summary judgment. Travelers' motion will be granted, and Allied's motion denied, as to Allied's two manufacturing sites located in Maryland. All claims seeking a declaration of the parties' rights and obligations as to non-Maryland sites will be dismissed.

## I.

The first—and critical—question is the one of choice of law. Allied argues that New York law should apply to the policies issued between 1951 and 1970 (the period during which Allied was headquartered in New York) and that New Jersey law should apply to policies sold after 1970 (when Allied moved its headquarters to New Jersey). Travelers argues that Maryland law governs all of the coverage questions or that, alternatively, New York law is applicable.

This Court is of the view that Maryland law applies. The law is clear that Maryland's choice-of-law rules govern. *See Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Miller v. Premier Corp.*, 608 F.2d 973, 985 (4th Cir.1979). Maryland generally follows the *lex loci contractus* rule under which a contract is construed according to the laws of the state "where the last act is performed which makes an agreement a binding contract." *See Kramer v. Bally's Park Place*, 311 Md. 387, 535 A.2d 466, 467 (1988); *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 215 A.2d 467 (1965); *Stout v. Home Life Ins. Co.*, 651 F.Supp. 28, 32 (D.Md. 1986), *aff'd* 818 F.2d 29 (4th Cir.1987). Under that rule, New York or New Jersey law would be controlling.[2]

The Maryland Court of Appeals, however, has recognized that in cases involving issues of important public policy, it is appropriate for a Maryland court to look to

---

**1.** Discovery has been continuing on issues which are particular to the two manufacturing facilities for which Allied seeks coverage. One of these facilities is the "Baltimore Works" located in Baltimore's Inner Harbor; the other is a plant located in Towson, a Baltimore suburb, operated by Bendix Corporation, an Allied subsidiary.

**2.** If this Court is incorrect in its conclusion that Maryland law applies, it is of the view that New York law is controlling. Allied and Travelers are agreed on that point for the policies issued up to 1970. As to the post–1970 policies, Travelers argues that New York law should apply because Travelers delivered the policies to Marsh & McLennan, Allied's insurance agent, in New York. Allied, on the other hand, argues that New Jersey law applies because Marsh & McLennan delivered the policies to Allied headquarters in New Jersey for acceptance. Allied's contention is based upon the conventional proposition that an insurance broker acts as an agent for the insurer. *See, e.g., Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 241 Md. 58, 66, 215 A.2d 467, 471 (1965); *District Agency Co. v. Suburban Delivery Serv., Inc.*, 224 Md. 364, 370–71, 167 A.2d 874, 877 (1961); *Sun Ins. Office Ltd. v. Mallick*, 160 Md. 71, 153 A. 35, 40 (1931).

(The parties properly agree that Maryland law applies to this issue). This is the general rule. However, it has been enunciated in cases where the insurance broker was acting in a dual agency capacity. Here, since the record is uncontradicted that Marsh & McLennan was solely the agent of Allied, application of the general rule would be the creation of a legal fiction squarely contradicted by fact. Thus, delivery of the post–1970 policies to Marsh & McLennan must be considered to be delivery of the policies to Allied, and New York law is applicable.

Under New York law, Travelers would likely prevail on at least one of the critical substantive issues. One New York court has held that a government-mandated remedial program to clean up environmental pollution is not covered by a comprehensive general liability policy such as the ones at issue here. *See County of Broome v. Aetna Cas. & Sur. Co.*, No. 86–0342 (N.Y. Sup.Ct. Broome County February 11, 1988); *cf. Gulf & Western Industries, Inc. v. Seaboard Sur. Co.*, 100 A.D.2d 820, 474 N.Y.S.2d 754 (1st Dep't. 1984); *but see Avondale Industries, Inc. v. Travelers Indem. Co.*, 697 F.Supp. 1314 (S.D.N.Y. 1988).

the law of the state whose law is applicable under the *lex loci contractus* doctrine to determine if that state would refer back to Maryland law for decision on the substantive issues presented. Thus, in *Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, 304 Md. 183, 498 A.2d 605, 609 n. 5 (1985), the Court of Appeals stated:

> Pennsylvania has no strong interest in having the contract provision enforced here as suggested by the fact that, had suit on the indemnity agreement been brought in Pennsylvania, the Pennsylvania court would likely have decided the issue according to Maryland law.... In these circumstances it would be ironic if, in balancing Maryland public policy against the *lex loci* rule, we were to hold that principles of comity require us to apply Pennsylvania law and ignore that state's conflict of law principles.[3]

■ This use of what is known as the doctrine of *renvoi* to pierce through "false conflicts" is widely endorsed. Commentators have recognized it as a sensible approach which enhances uniformity and accommodates situations where "the foreign conflicts rule itself discloses a disinterest to have its own substantive law applied and a recognition of the significance of the forum's law." *See* Scoles & P. Hay, *Conflicts of Law* § 3.13, at 69–70 (1984); R. Lefler, *American Conflicts Law* §§ 7, 8, 92 (4th ed. 1986); R. Weintraub, *Commentary on the Conflicts of Laws* § 3.3, at 67–72 (3d ed. 1986); *Restatement (Second) of Conflicts of Law* § 8. Its application here is particularly appropriate since the substantive issues presented involve extremely important questions of insurance law and environmental policy.

■ The conflicts laws both of New York and of New Jersey would result in the application of the law of Maryland as the state having the most substantial interest in the outcome of the litigation. *See, e.g., Steinbach v. Aetna Cas. & Sur. Co.*, 81 A.D.2d 382, 440 N.Y.S.2d 637, 640 (1st

Dept.1981) (New York applies law of principal location of insured risk and state most intimately concerned with litigation's outcome); *Puro International of New Jersey Corp. v. California Union Ins. Co.*, 672 F.Supp. 129, 133 (S.D.N.Y.1987) (same); *State Farm Mut. Auto. Ins. Co. v. Simmons Estate*, 84 N.J. 28, 417 A.2d 488 (1980) (New Jersey uses "governmental interest" test); *Diamond Shamrock Corp. v. Aetna Cas. & Sur. Co.*, No. C–3939–84 (N.J.Super.Ct. Oct. 2, 1987) (applying laws of state where environmental pollution site located in insurance coverage controversy, under governmental interest test); *Witco Corp. v. Travelers Indem. Co.*, No. 86–2997 (D.N.J. May 1, 1987) (same). Therefore, Maryland law is applicable here.

## II.

Travelers contends, alternatively, that this case falls within the exception to the *lex loci contractus* rule which the Maryland Court of Appeals has recognized in cases where a strong public policy prohibits application of a foreign law contrary to that policy. *See Kramer v. Bally's Park Place*, 311 Md. at 390, 535 A.2d at 467 (1988); *Bethlehem Steel Corp. v. E.C. Zarnas & Co.*, 304 Md. at 189, 498 A.2d at 607–08. Specifically, Travelers argues that Maryland public policy mandates the denial of insurance coverage to any company which deliberately pollutes the environment, regardless of what the law of another jurisdiction would decree.

Although Maryland unquestionably has a strong public policy against pollution, the conclusion urged by Travelers does not necessarily follow for two reasons. First, numerous factual questions underlie a proper determination of where the public interest actually lies, including the nature of Allied's acts causing the pollution, its state of knowledge concerning the consequences of those acts and Travelers' own knowledge

**3.** If this Court were to apply New Jersey law here, the irony would be supreme. Had this Court granted Allied's motion to stay and had the Superior Court of New Jersey entertained

the declaratory judgment action filed there as to the Maryland sites, the New Jersey court would have applied Maryland law. *See* authorities cited *infra*.

of Allied's activities.[4] Resolution of these questions would, at least, have to await completion of the site-specific discovery. Second, two different inferences can be drawn from Maryland's strong anti-pollution policy. On the one hand, that policy could be said (as Travelers argues) to prohibit a deliberate polluter from obtaining insurance for intentional misconduct. On the other hand, it might be reasoned that Maryland environmental authorities may properly look to an insurance company to provide pollution coverage for harm caused to the State where the insurer has over time collected substantial premiums to provide comprehensive liability coverage to the polluter. This would be particularly so if the insurer had contemporaneous knowledge of the insured's activities causing the pollution and might therefore be said to have been implicated, at least to some degree, in those activities.

For these reasons this Court cannot conclude that the Maryland Court of Appeals would apply the public policy exception to the *lex loci contractus* rule to override the law of a state imposing a duty of coverage upon Travelers. However, since the public policy considerations here involved are so important, this Court believes that in the event that the Fourth Circuit eventually certifies the questions presented in this case to the Maryland Court of Appeals (see part III, *infra*), the latter court might wish to consider whether, notwithstanding its general position on the question, *see generally Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207, 1209–10 (1983), the present case is an instance in which the "governmental interests" approach to conflicts questions should be taken. As the Court of Appeals recognizes, in ordinary commercial cases

public policy is furthered by the *lex loci contractus* rule because it provides a certainty upon which contracting parties can rely. However, it would appear to be an unseemly derogation of its sovereign power for a state to decline to apply its own substantive law to matters which directly impact upon its physical environment and which seriously affect the welfare of its citizens.

## III.

■ The conclusion that Maryland law is applicable virtually dictates the decision which this Court must reach on the substantive issues. Applying Maryland law, the Fourth Circuit has held that environmental clean-up costs, incurred pursuant to an injunction, do not constitute "damages" within the meaning of policy language equivalent to that involved here.[5] *Maryland Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988); *accord Ft. McHenry Lumber Co. v. Pennsylvania Lumbermen's Mut. Ins. Co.*, No. HR–88–825, 1988 WL 74843 (D.Md. September 23, 1988); *see also Cincinnati Ins. Co. v. Milliken and Co.*, 857 F.2d 979 (4th Cir.1988) (applying South Carolina law); *Continental Ins. Co. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977 (8th Cir. (*en banc*), *cert. denied*, —— U.S. ——, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988); *Aetna Cas. & Sur. Co. v. Hanna*, 224 F.2d 499 (5th Cir.1955); *but see Chesapeake Utilities Corp. v. American Home Assurance Co.*, 704 F.Supp. 551 (D.Del.1989). It is precisely such costs which Allied is seeking to recover as "damages" in this case.[6] Furthermore, again applying Maryland law, the Fourth Circuit

---

**4.** If the resolution of these questions is favorable to Travelers as to the later policy years but favorable to Allied as to the earlier policy years, a subsidiary issue of causation is presented. Was the damage caused to the environment by Allied's operations in the earlier years—when, perhaps, given the state of then current knowledge and public sensivity to environmental concerns, activities resulting in pollution were less reprehensible than they later became—so substantial that the clean-up costs now claimed by Allied would have had to be incurred in any event?

**5.** Interestingly, *Armco* involved a manufacturing facility located in Missouri. The Court merely recited that Maryland law applied without discussing any choice-of-law issues.

**6.** Allied incurred clean-up costs at its Towson site in anticipation of governmental action, not pursuant to an injunction which had already been issued. However, Allied properly does not seek to distinguish *Armco* on that ground.

has held that costs incurred to prevent future pollution to the environment do not constitute "damages because of property damage." *Mraz v. Canadian Universal Ins. Co.,* 804 F.2d 1325 (4th Cir.1986). The costs incurred by Allied at the Baltimore Works site located in the Inner Harbor were all incurred to prevent future damage, and at least a portion of the costs incurred by Allied at the Towson site relate to preventing future pollution.

This Court is bound by these Fourth Circuit precedents. If it were not, it would certify the questions decided by *Armco* and *Mraz* to the Maryland Court of Appeals. It would appear appropriate for the Fourth Circuit to do the same when this case is, as it surely will be, appealed. There are two related reasons that this Court believes such a course is proper. First, as indicated above, fundamental issues of public policy underlie the legal questions here presented, and principles of federalism dictate that it be the affected State, not a federal court, which resolves those issues. Second, Allied has argued throughout this litigation, not without basis, that Travelers instituted this action at least in part to obtain the benefit of favorable Fourth Circuit law. In denying Allied's motion to stay, this Court concluded that the interest against forum-shopping was outweighed by the interest of expeditious resolution of the issues presented. However, certification of the issues decided by *Armco* and *Mraz* would serve *both* of those interests by providing a means for them to be decided promptly in the most appropriate forum.[7]

## IV.

Thus finding *Armco* and *Mraz* dispositive, this Court deems it improvident to reach the myriad of other issues raised by the parties. All of those issues are mooted if *Armco* and *Mraz* are controlling, and several of them, particularly those relating to foreseeability, alleged intentional misconduct and other so-called "moral hazard" questions, would be better resolved after a full factual record has been developed on site-specific issues.

From this Court's holding that Travelers is under no duty to provide coverage to Allied, it follows *a fortiori* that Travelers has not committed any breach of contract, acted in bad faith or violated any fiduciary duty in refusing to provide that coverage. Accordingly, summary judgment will be entered in favor of Travelers on all of Allied's counterclaims. All claims asserted by either party seeking a declaration of their respective rights and duties as to non-Maryland sites will be dismissed on the ground that those issues should be decided in a forum where the sites in question are located.

A separate order effecting the rulings made in this memorandum is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 20th day of June 1989

ORDERED

1. It is declared that Travelers Indemnity Company is under no obligation to provide insurance coverage to Allied–Signal, Inc. for any of the clean-up costs incurred by Allied at the Baltimore Works site or at the Bendix facility located in Towson, Maryland;

2. Summary judgment is entered in favor of Travelers against Allied on Allied's counterclaims for breach of contract, "bad faith" and breach of fiduciary duty; and

3. All claims asserted by either party seeking a declaration of rights and duties under the insurance policies issued by Travelers to Allied as to any non-Maryland site are dismissed.

---

**7.** Although this Court would ordinarily not certify a choice-of-law question to the Maryland Court of Appeals, if it were entering a certification order here, the first question which it would pose would be whether under Maryland conflicts rules, Maryland substantive law applies. Again, the Court respectfully suggests that the Fourth Circuit do likewise. If the Maryland Court of Appeals were to decide, contrary to what this Court has concluded, that Maryland law is not applicable, it would seem inappropriate for a federal court to ask the Court to address difficult and serious legal questions by way of dictum.

## SUPPLEMENTAL MEMORANDUM

Allied has filed a motion requesting this Court to alter or amend the judgment which it entered pursuant to its June 20, 1989 memorandum.

### I.

Citing the unpublished opinion in *Bonstingl v. Maryland Bank, N.A.*, 841 F.2d 1122 (4th Cir.1988), *affirming* 662 F.Supp. 882 (D.Md.1987), Allied first argues that the Fourth Circuit has indicated that "Maryland does not apply the doctrine of *renvoi*." As indicated in its original memorandum, this Court agrees that as a general proposition that statement is true. However, the Maryland Court of Appeals has suggested that the doctrine might be appropriately applied to pierce through a false conflict where strong public policy issues are at stake. *See Bethlehem Steel Corp. v. G.C. Zarnas*, 304 Md. 183, 498 A.2d 605 (1985). *Bonstingl*, which involved the far different question of whether Maryland or Greek law should be applied to alleged torts arising out of the plaintiff's arrest and detention in Greece, does not compel this Court to ignore what the Maryland Court of Appeals has said.[1]

### II.

Allied further argues that even assuming the doctrine of *renvoi* to apply, neither New York nor New Jersey would apply Maryland law to this controversy. This Court remains of the view that under the authorities cited in its original memorandum the conflicts law of New York would result in the application of Maryland law. However, Allied is correct in arguing that

*Westinghouse Electric Corp. v. Liberty Mutual Ins. Co.*, 233 N.J.Super. 463, 559 A.2d 435 (A.D.1989), draws into question whether the courts of New Jersey would apply Maryland law.

*Westinghouse* is an "omnibus" suit instituted by Westinghouse against all of its insurers seeking a declaration of its coverage for environmental and toxic-waste cleanup costs. The trial court had dismissed on *forum non conveniens* grounds all claims relating to non-New Jersey sites. In reversing that ruling, the Appellate Division stated that "[i]n our view, the notion that the insurer's rights under a single policy vary from state to state depending on the state in which the claim invoking the coverage arose contradicts not only the reasonable expectation of the parties but also the common understanding of the commercial community. It also seems to us anomalous, in conflict-of-law terms, to suggest that more than one body of law would apply to a single contract."

The opinion in *Westinghouse* is somewhat disturbing in its implications and, in this Court's view, emphasizes the need for the Fourth Circuit to certify to the Maryland Court of Appeals the question, *inter alia*, of whether a "governmental interests" approach to conflicts questions is appropriate in cases of this kind involving serious questions of insurance and environmental law and policy.[2] Acknowledging that the parties had not even briefed the conflicts question in *Westinghouse*, the Appellate Division reached out to address it in dictum. It might be inferred that it was motivated to do so, at least in part, by a

---

1. Allied suggests, alternatively, that this Court should itself certify to the Maryland Court of Appeals the question of whether the doctrine of *renvoi* applies. This Court indicated in its June 20, 1989 memorandum that it believed that the conflicts question in its entirety should be so certified, and, as indicated *infra*, this belief has been re-enforced by the opinion of the Appellate Division of the Superior Court of New Jersey in *Westinghouse Electric Corp. v. Liberty Mutual Ins. Co.*, 233 N.J.Super. 463, 559 A.2d 435 (A.D. 1989). However, it would be senseless to certify the conflicts question independently of the two policy interpretation questions decided by *Mary-*

*land Casualty Co. v. Armco, Inc.*, 822 F.2d 1348 (4th Cir.1987), *cert. denied*, 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) and *Mraz v. Canadian Universal Ins. Co.*, 804 F.2d 1325 (4th Cir.1986), and the Fourth Circuit is the appropriate tribunal to certify the latter if it so chooses.

2. Of course, if this Court is correct in its conclusion that New York substantive law, rather than New Jersey substantive law, applies to all of the policies in question in the event that Maryland substantive law does not, see June 20, 1989 Memorandum, n. 2 and section III *infra*, New Jersey's conflicts law is immaterial here.

perception of an extraneous self-interest: inducing large corporations to do business in the state by the creation of a body of law favorable to insureds. Thus, early in its opinion, the Appellate Division referred to the fact that Westinghouse employs over 1,000 people in the state and in 1986 paid more than 1.5 million dollars in taxes to state and local governments. In justifying placement of the burden upon the New Jersey court system of omnibus insurance litigation, the Court became even more explicit: "[t]here can be no doubt that the economic prosperity we enjoy in this State is in large measure attributable to major national corporations which, like Westinghouse, are incorporated elsewhere but engage in substantial business activity here, employ our residents, and contribute to our tax base."

It is entirely proper for the courts of New Jersey, subject to legislative strictures, to make rulings on questions of law against the background of what they perceive the underlying public policy of the state to be. However, a state's legitimate interest in attracting corporate business does not justify its encouragement of forum shopping to its own courts or its intrusion upon the sovereign power of its sister states to make their own decisions concerning matters directly affecting their interests within their borders. This is not to say that there would not be substantial benefit, as the *Westinghouse* court suggests, in uniform rules of interpretation or some other national resolution of the question of insurance coverage for environmental cleanup costs.[3] However, short of congressional intervention or a limited overruling of the *Erie* doctrine to permit the development of a federal common law of contracts intended to be nationwide in scope, the existing dichotomous lines of substan-

tive rulings, the maze of conflicts laws and the litigation strategies of insureds and insurers alike make the achievement of such uniformity an illusion. The next best available alternative—required by the interests of the fair and sound administration of justice—is the deliberate and impartial resolution of the issues by the courts of the states whose interests are immediately affected during the course of litigation which can be effectively managed.[4]

### III.

Allied's final argument in support of its motion for reconsideration is that this Court erred in finding that in the event that Maryland law is not applicable, New York law is applicable to the post–1970 policies as well as the pre–1970 policies. As indicated in its original memorandum, Allied takes the position that the place of delivery to Allied of a policy was the final act necessary to make it a binding contract. *See, e.g., Fireman's Fund Ins. Co. v. Service Transp. Co.,* 466 F.Supp. 934, 935 (D.Md.1979); *Chesapeake & Potomac Tel. Co. v. Allegheny Constr. Co.,* 340 F.Supp. 734, 739–40 (D.Md.1972). Undisputably, this act occurred in New York as to all pre–1970 policies when Allied was headquartered there. Allied contends that it accepted delivery of post–1970 policies in New Jersey where it had then moved its corporate headquarters.

The record is uncontradicted that Travelers delivered the post–1970 policies to Marsh & McLennan in New York. In its June 20, 1989 memorandum, this Court ruled that this delivery was effective because the record is uncontradicted that Marsh & McLennan acted exclusively as Allied's agent. Allied challenges that finding on the ground that representatives of Allied and Marsh & McLennan have sub-

---

**3.** At the same time the Appellate Division's easy assertion that the parties reasonably contemplated that the policies would be interpreted under the law of a single state may be suspect in light of the substantial body of existing conflicts laws—against the background of which the policies were issued—making applicable the law of the forum, usually the situs of the insured property, having the greatest governmental interests in the controversy.

**4.** The experience in this case teaches that the site-specific issues necessarily involved if coverage does exist simply cannot be resolved in omnibus actions. The discovery on such issues has been so extensive and burdensome that *Allied* requested relief from it while the conflicts of law and contract interpretation issues were being decided.

mitted affidavits stating that Marsh & McLennan was not authorized to accept delivery of policies on Allied's behalf. However, it is hornbook law that a limitation on an agent's authority not communicated to third parties is not effective as to them, and the record fully establishes—as chief counsel for Allied in the New Jersey suit parallel to this action has represented in open court—that Marsh & McLennan operated in New York as Allied's agent. The fact that an Allied official may have reviewed the policies after receiving them from Marsh & McLennan and before placing them in his file to make sure that they conformed to what had been agreed upon by the parties is immaterial. As Allied would surely argue in a case where the existence of coverage depended upon the time of delivery of the policy, such a ministerial act is not the stuff from which the creation of binding contractual rights and obligations are made.

A separate order denying Allied's motion is being entered herewith.

### ORDER

For the reasons stated in the Supplemental Memorandum entered herein it is this 4th day of August 1989

ORDERED that Allied–Signal, Inc.'s motion to alter or amend judgment is denied.