724 F.Supp. 303 (1989)
SANDVIK, INC., Plaintiff,
v.
The CONTINENTAL INSURANCE COMPANY, Liberty Mutual Insurance Company, Granite State Insurance Company and National Union Fire Insurance Company of Pittsburgh, P.A., Defendants.
Civ. A. No. 89-1916.
United States District Court, D. New Jersey.
October 18, 1989.
*304 Kevin J. Bruno, Hannoch Weisman, Roseland, N.J., and Neal R. Brendel, and James R. Segerdahl, Kirkpatrick & Lockhart, Pittsburgh, for plaintiff.
Phillip C. Landrigan, and Marjorie H. Mintzer, Sheft & Sweeney, Jersey City, N.J., for defendants Granite State Ins. Corp. and National Union Ins. Co. of Pittsburgh, Pa.
Martha J. Koster, and Kim Marrkand, Gaston & Snow, Boston, Mass., for defendant Liberty Mut. Ins. Co.
Patricia L. Noll, Bumgardner, Hardin & Ellis, Springfield, N.J., for defendant Continental Ins. Co.
LECHNER, District Judge.
This matter is before the court on the motion of defendants National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), Granite State Insurance Company ("Granite State"), Liberty Mutual Insurance Company ("Liberty") and The Continental Insurance Company ("Continental") (collectively the "defendants")[1] to transfer this action filed by Sandvik, Inc. ("Sandvik")[2] to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the motion is granted.

Facts
Sandvik filed this environmental insurance coverage action on 2 May 1989 seeking, among other things, declaratory judgment to the effect that insurance policies issued to it by the defendants provide coverage for claims against Sandvik associated with the release of industrial wastes in Pennsylvania. Jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332. Complaint, ¶ 6. Sandvik asserts venue is proper in this district as the place where the claim arose under 28 U.S.C. § 1391(c). Complaint, ¶ 7.
National Union is a Pennsylvania corporation with its principal place of business in New York. None of the other defendants are Pennsylvania corporations and their principal places of business are located outside Pennsylvania. Complaint, ¶¶ 2-5. The defendants are each registered to do business in New Jersey and are subject to personal jurisdiction in this district. Id. The record does not indicate whether the defendants are registered to do or are doing business in Pennsylvania.
Sandvik is a Delaware corporation headquartered in Fair Lawn, New Jersey since 1955. It is engaged in the manufacture of cemented carbide cutting inserts and specialty steel products. Hodgen Aff., ¶ 3. *305 Sandvik's Fair Lawn headquarters includes a facility for the manufacture of cemented carbide cutting inserts. Sandvik is also registered and doing business in Pennsylvania under the name Sandvik Steel Company ("Sandvik Steel"). Landrigan Aff., ¶ 2. Sandvik Steel has a facility in Scranton, Pennsylvania, which generated the industrial waste underlying this action.
The waste generated by Sandvik Steel in Scranton was disposed at an industrial waste disposal site located in Upper Merion Township, Pennsylvania, (the "site") which is within the Eastern District of Pennsylvania. Landrigan Aff., ¶¶ 2, 9. Sandvik asserts it maintains no facility in the Eastern District of Pennsylvania and has no employees there. Hodgen Aff., ¶ 10. Scranton, Pennsylvania is located in the Middle District of Pennsylvania.
Prior to commencement of this action, the United States Environmental Protection Agency, Region III, Philadelphia, Pennsylvania (the "EPA") notified Sandvik it was a potentially responsible party pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, et seq. in connection with contamination at the site. The site appears to have been owned by the O'Hara Sanitation Company, Inc. ("O'Hara Sanitation") since 1975 and operated as a recycling center accepting waste from various companies. Sandvik has neither owned nor operated the site. Hodgen Aff., ¶ 10. The EPA alleged Sandvik contracted in the 1970s with a waste hauler to transport industrial waste from Sandvik's Scranton, Pennsylvania facility to be disposed at the site. The EPA also identified several other potentially responsible parties for the contamination at the site.
The EPA's claims concerning Sandvik were settled pursuant to a Partial Consent Decree, executed by Sandvik in December 1988. Complaint, ¶ 18. Under the settlement plan, Sandvik is liable for $248,000 of the estimated $5,500,000 cost of the cleanup of the site described in the EPA's Remedial Design/Remedial Action plan. Complaint, ¶ 20. The EPA filed an action to enforce the Partial Consent Decree and the remedial action plan in the Eastern District of Pennsylvania on 24 February 1989. Complaint, ¶ 22.
Under the terms of the Partial Consent Decree, the remedial action program will be performed over an estimated thirty years. The full extent of Sandvik's liability in connection with clean-up of the site is not yet determined; the Partial Consent Decree provides the ultimate liability of Sandvik may be revised upward or downward depending on actual costs of the remedial action program. Complaint, ¶ 21; Landrigan Aff., ¶ 4. In addition, the EPA has reserved the right to proceed against Sandvik for additional remedial action. Complaint, ¶ 23.[3]
The Pennsylvania Suburban Water Company ("PSWC") also made claims against Sandvik and others regarding contamination at the site. Landrigan Aff., ¶ 5 & Ex. C. PSWC's claims were based on migration of pollutants from the site to the Upper Merion water reservoir.[4]Id. PSWC asserted its claim in connection with an action commenced against O'Hara Sanitation in the Eastern District of Pennsylvania, but PSWC did not institute legal proceedings against Sandvik. Sandvik entered into a settlement agreement with PSWC in February 1989 under which Sandvik's share of settlement is $28,600. Complaint, ¶ 25.
Sandvik claims all the defendants were notified of the EPA and PSWC claims prior to settlement of those claims. Complaint, ¶¶ 15, 25. Each defendant provided Sandvik *306 with comprehensive general liability insurance ("CGL") policies[5] insuring Sandvik against liabilities arising out of various risks at any of Sandvik's locations in the United States.[6] The CGL policies were not specific to particular sites or states. Hodgen Aff., ¶ 7. Sandvik claims all the CGL policies were purchased, negotiated and received by Sandvik through its headquarters at Fair Lawn, New Jersey. Hodgen Aff., ¶ 8. Sandvik also indicates its broker during the time the CGL policies were purchased was a New York firm called Sterling & Sterling. Id.
In this action Sandvik seeks a declaratory judgment to the effect that the CGL policies issued to it by the defendants provide coverage for release of industrial wastes at the site. Sandvik asserts that the defendants are obligated to defend and indemnify it in connection with: (1) the enforcement action brought by the EPA in the Eastern District of Pennsylvania, (2) PSWC's claim for contamination of the water reservoir, and (3) potential future pollution claims.

Discussion
The defendants have moved to transfer this action to the Eastern District of Pennsylvania pursuant to the provisions of 28 U.S.C. § 1404(a). Section 1404(a) permits a district court to transfer a case to any other district where the action "might have been brought." Id. Transfer is appropriate under this statute when made "[f]or the convenience of the parties and witnesses, in the interest of justice...." Id.
The purpose of section 1404(a) "is to prevent waste of `time, energy and money' and `to protect litigants, witnesses and the public against unnecessary inconvenience and expense....'" Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 809, 11 L.Ed.2d 945 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27, 80 S.Ct. 1470, 1474-75, 4 L.Ed.2d 1540 (1960)); Hardaway Constr. v. Conesco Indus. Ltd., 583 F.Supp. 617, 619 (D.N.J. 1983). The terms of the statute suggest three factors must be considered in transferring a case: (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. Derry Finance N.V. v. Christiana Companies, Inc., 555 F.Supp. 1043, 1045 (D.Del.1983). In addition, the transferee forum must be one where the suit "might have been brought." 28 U.S.C. § 1404(a); see Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970), cert. denied, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); Derry Finance, 555 F.Supp. at 1045.
The only alternative forum proposed for transfer is the Eastern District of Pennsylvania, where the site is located. The defendants have conceded venue is appropriate in the Eastern District of Pennsylvania. Defendants' Brief at 8 n. 4. ("From the face of the complaint diversity jurisdiction exists and venue is proper in the Eastern District of Pennsylvania"). Sandvik has not contested this point.[7] No "real question" exists as to the appropriateness of venue in the Eastern District of Pennsylvania. *307 Shutte, 431 F.2d at 24. Therefore, transfer is appropriate if other relevant considerations weigh in favor of transfer under 1404(a).
In enacting section 1404, Congress intended to lessen the harsh effects of dismissal of an action under the common law doctrine of forum non conveniens. Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546-47, 99 L.Ed. 789 (1955). Because a motion to transfer an action to a more convenient forum does not result in dismissal of the case, the defendant is required to make "a lesser showing of inconvenience" than would be required for a dismissal at common law. Id. Accordingly, federal courts have broader discretion to transfer an action under section 1404(a) than to dismiss under the doctrine of forum non conveniens. Id.; All State Freight v. Modarelli, 196 F.2d 1010, 1011 (3d Cir.1952); Rutherford v. Sherburne Corp., 616 F.Supp. 1456, 1463 (D.N.J.1985).
There appears to be no limit to the number of factors a federal court may consider in connection with a motion to transfer venue under section 1404(a). The analysis is flexible and must be made on the unique facts of each case. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50, 102 S.Ct. 252, 262-63, 70 L.Ed.2d 419 (1981); Van Dusen, 376 U.S. at 623, 84 S.Ct. at 812-13. In Gulf Oil v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1946), the Supreme Court enunciated various factors which should be considered in deciding a transfer request.[8]
The Gulf Oil factors fall into two broad categories. One category includes factors relating to the so-called "private interests" of the parties in the context of the litigation: the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the premises. Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843. The other category consists of the "public interest" in the administration of courts and adjudication of cases: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law. Id. at 508-09, 67 S.Ct. at 843.
Under the Gulf Oil analysis, a plaintiff's choice of forum is presumptively correct. Piper Aircraft, 454 U.S. at 255, 102 S.Ct. at 265-66. In the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. Shutte, 431 F.2d at 25. When a plaintiff chooses his home forum, the choice is "entitled to greater deference." Piper Aircraft, 454 U.S. at 255, 102 S.Ct. at 266.
As the moving party in this case, the defendants have the burden of persuasion on their motion to transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). To overcome the presumption in favor of Sandvik's choice of forum, the defendants must show, under the test enunciated in Gulf Oil, the balance of conveniences weighs "strongly in favor" of transfer to a more convenient forum. Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843; Shutte, 431 F.2d at 25; Reading Metal Craft Co. v. Hopf Drive Assoc., 694 F.Supp. 98, 102 (E.D.Pa.1988); Hardaway, 583 F.Supp. at 620. This requires "something more than a mere preponderance of the evidence" in favor of transfer. Kisko v. Penn Cent. Transp. Co., 408 F.Supp. 984, 986 (M.D.Pa.1976); see Armotek Indus., Inc. v. Employers Ins. of Wausau, No. 88-3110, slip op. at 14, 1989 WL 21771 (D.N.J. 7 March 1989) (reported at 1989 U.S.Dist. LEXIS 2421) (Plaintiff's App., Ex. C); Borough of Fort Lee v. Port Auth. of New York and New Jersey, 1988 WL 24146, 1988 U.S. Dist. LEXIS 3429, *14 (D.N.J.1988); Prudential Ins. Co. v. Roda- *308 no, 493 F.Supp. 954, 955 (E.D.Pa.1980).[9]
Having concluded the Eastern District of Pennsylvania is an appropriate forum for transfer and having noted the burden is on the defendants to show a strong reason exists to transfer this case, the private and public interests analysis must be considered.

Private Interests
The primary private interest at issue in this case is the convenience of the two available districts concerning the witnesses and the documentary evidence of both parties. Part of this determination is the issue of whether litigation of Sandvik's claims requires reference to site-specific facts and testimony from witnesses who are located in Pennsylvania.
Sandvik characterizes its claim as merely a matter of contractual interpretation of an insurance policy. It argues the documents and witnesses relevant to the construction of the CGL policies are located at Sandvik's headquarters in Fair Lawn, New Jersey. Hodgen Aff., ¶¶ 8-9. Sandvik also claims it has produced to the defendants most of the key documents concerning Sandvik's liability for and settlement of claims arising out of the site. Plaintiff's Opposition Brief, at 7. In the alternative, Sandvik represents it will make its documents and witnesses available to the defendants in New Jersey. Hodgen Aff., ¶ 9. Thus, Sandvik argues litigation of its claims will not require extensive inquiry into site-specific facts because they are "irrelevant to the resolution of any of the legal issues." Plaintiff's Opposition Brief, at 13.
The defendants vigorously oppose Sandvik's characterization of this action. According to the defendants, litigation of Sandvik's environmental coverage claim requires inquiry into the Pennsylvania activities and environmental practices of Sandvik Steel which give rise to this action and the alleged duty of the defendants to defend and indemnify Sandvik in connection with the EPA, PSWC and future claims. Specifically, the defendants state each coverage claim raises factual issues which cannot be determined merely by reference to the contract: whether Sandvik can establish its claims "trigger" coverage under the CGL policies and whether the "occurrence" and "pollution exclusion" provisions of the CGL policies apply. Defendants' Brief, at 15-17.
Environmental coverage claims cannot be decided in a vacuum; they require investigation into site-specific facts and cannot be decided merely by reference to the terms of the insurance policy. For example, in Riehl v. Travelers Ins. Co., 772 F.2d 19 (3d Cir.1985), the Third Circuit reversed the grant of summary judgment in favor of a claimant on a CGL policy, stating:
Before liability can be assessed or denied, the following questions of fact, among others, must be answered: 1) when were the toxic substances brought onto the property; 2) who brought the toxic substances onto the property; 3) what was the extent of [the claimant's] knowledge, if any, of toxic waste dumping; 4) whether within the meaning of the policy terms, [the claimant] `expected or intended' the pollution damage....
Id. at 24-25; see New Castle County v. Hartford Accident & Indemnity Co., 685 F.Supp. 1321 (D.Del.1988); see also American Motorists Ins. Co. v. Levelor Lorentzen, Inc., No. 88-1994, slip op. at 10, 1988 WL 112142 (D.N.J. 14 October 1988) (reported at 1988 U.S.Dist. LEXIS 11631) *309 (Plaintiff's App., Ex. D). This list is neither limiting nor exclusive.
While the time, place and manner of the dumping are known in this case, crucial issues involving, among other things, the content and amount of the toxic substances and Sandvik's knowledge of the dumping may be disputed. The EPA alleged Sandvik hired a waste hauler to dispose of waste generated at the Scranton, Pennsylvania facility. As well, testimony is anticipated as to the extent of seepage from the site to surrounding areas and the likelihood that future claims will be brought against Sandvik.
Consideration concerning the requested declaratory judgment cannot be undertaken without determining whether the events, past and future, in this case trigger coverage under the CGL policies. Interpretation of whether the CGL policies cover environmental claims might be made without looking beyond the language of the contract or the intent of the parties when the policies were signed. Assuming this issue were resolved in favor of Sandvik, however, the construction of the terms of the CGL policies and the determination of whether the EPA, PSWC and future claims concerning the site trigger coverage of the CGL policies would require inquiry into site-specific data. See Armotek, supra, at 6-7 ("the court will require evidence concerning both the contract's negotiation and the Norwich pollution; the former will determine what events are covered, while the latter will determine whether this particular event is among them").
The defendants claim the sources of proof, non-party witnesses and documents relevant to these issues are almost exclusively located in Pennsylvania. For example, the majority of parties named by the EPA as potentially responsible for contamination at the site are located in Pennsylvania.[10] Also located in Pennsylvania are the engineers hired by the potentially responsible paries to perform a remedial investigation and feasibility study in connection with the settlement of the EPA's claims. Landrigan Aff., ¶ 13. As well, personnel involved in preparing the work plan of the feasibility study and the site manager of the EPA's thirty year remedial action plan are located in Pennsylvania.[11] Finally, EPA personnel who investigated and participated in evaluation of the pollution conditions at the site are located in Pennsylvania.[12]
Sandvik has not responded in kind to the defendants' lengthy list of witnesses located in Pennsylvania. The affidavit submitted by Sandvik merely states witnesses relevant to Sandvik's negotiation of the CGL policies, waste disposal practices and settlement of the EPA and PSWC claims are located at Sandvik's headquarters in Fair Lawn, New Jersey. Hodgen Aff., ¶¶ 8-9. The affidavit does not name these witnesses or indicate how many there may be. Whatever inconvenience may exist is further reduced by the fact that Sandvik maintains a substantial presence in Pennsylvania. That forum is not foreign to Sandvik and, on the facts before the court, it does not appear Sandvik would be inconvenienced by transfer there.
In Armotek, supra, the court declined to transfer a similar case from the District of New Jersey to the District of Connecticut although the site underlying the plaintiff's environmental coverage claim was located in Connecticut. The court denied the defendant insurance company's motion to transfer because it had not established the District of Connecticut was an appropriate forum. Id. at 3. In dictum, however, the court noted the convenience of the witnesses *310 favored transfer to the District of Connecticut.[13] As in the instant case, the defendant had shown the majority of witnesses knowledgeable about the alleged pollution site were located there. Id. at 7.[14]
Sandvik has also indicated it will provide its witnesses and documents relevant to the negotiation and interpretation of the CGL policies in New Jersey. This representation does not allay the inconvenience to numerous non-party witnesses, such as engineers and government agents involved in the investigation of the site and the remedial action plan, who are located in Pennsylvania and who will be required to spend significant amounts of time traveling to and from depositions and trial in this case. See Hardaway, 583 F.Supp. at 621 (fact that case is highly technical and requires participation of government witnesses located in alternative forum weighs in favor of transfer).
Sandvik argues the inconvenience of this forum is not great because the alternative forum is within seventy-five miles of this courthouse. However, this is not a case in which inconvenience of litigation in the alternative forums is relatively equal. See, e.g., Reading Metal Craft, 694 F.Supp. at 103. It would be unfair to non-party witnesses to add to the burden of giving countless hours of testimony at trial or in depositions the additional time of travel to and lodging in a different state when an adequate, local alternative forum is available. Transfer will alleviate this inconvenience and increase the ease of discovery and trial for the parties and non-party witnesses alike.
In this case, the difficulty and inconvenience of litigation in the District of New Jersey is compounded by the fact that Sandvik has not only requested declaratory judgment as to the settled EPA and PSWC claims, but also as to any future claims arising out of the contamination at the site. Complaint, ¶¶ 24, 43. The EPA's remedial action program will be ongoing for thirty years, during which time Sandvik's liability may be adjusted upward or downward depending on the actual costs of clean-up, and the EPA may proceed against Sandvik for additional remedial action. Id. ¶¶ 21-23. Declaratory judgment as to the liability of the defendants for any future claims will undoubtedly require access to sources of proof located at or near the site, concerning for example: the actual cost of the remedial action plan, the present extent of seepage from the site to surrounding areas and the likelihood that future claims will be brought.
Finally, it is noted the other private interest factors which may be considered, such as the possibility of a jury view of the site and obstacles to a fair trial, have not been proven to add any weight to the balance in favor of the defendants in this case. However, it is clear the convenience to the witnesses (particularly non-party witnesses located near the site) and the ease of access to sources of proof weigh strongly in favor of transfer of this action to the Eastern District of Pennsylvania.

Public Interests
Both New Jersey and Pennsylvania have interests in the outcome of this action. Pennsylvania has an interest in ensuring contamination at the site will be removed; the outcome of this action relates to that interest by determining how liability for environmental clean-up costs will be allocated. New Jersey has the interest of resolving coverage issues involving a New Jersey based insured. Under the facts of *311 the instant dispute, the interests of Pennsylvania dominate.
The defendants are large insurance companies with presences in several states. The CGL policies at issue in this case were issued to Sandvik by each defendant through Sandvik's broker in New York and delivered to Sandvik at its New Jersey headquarters. The CGL policies themselves covered Sandvik's businesses in several states. Given the number of contacts in this case, the place of contracting, as well as the question of what law should apply,[15] are not settled.
In contrast, the location of the underlying events giving rise to this action is undisputed. The site and all the claims relating thereto are located in Pennsylvania, as opposed to New Jersey. In addition, Sandvik maintains manufacturing facilities in both New Jersey and Pennsylvania.
While New Jersey has an interest in permitting an in-state plaintiff to sue in its home forum, Pennsylvania has a similar interest by virtue of Sandvik's substantial presence in that state. Pennsylvania, however, has the additional interest of ensuring that clean-up of the site is effected. New Jersey has no correlative interest in the clean-up of the site. As the defendants note, the allocation of clean-up costs is fundamental to any state's environmental policy. Defendants' Brief, at 23 n. 4. Therefore, even if it were true that this case involved no more than the interpretation of insurance contracts, Pennsylvania would have a substantial interest making that determination.
This case is of unique importance to Pennsylvania because Sandvik has requested declaratory judgment with regard any and all future claims which may be brought against it as well as claims which have been settled. Sandvik seeks declaratory judgment on the defendants' liability for claims which may be brought by Pennsylvania residents whose property has been damaged as a result of migration of pollutants from the site.[16] Accordingly, this case is distinguishable from cases in which the primary issue was merely the interpretation of insurance policies and the allocation of costs with regard to existing claims.
For example, in Armotek, supra, the court held that Connecticut  the state where the contaminated site was located  had a lesser interest than New Jersey  the state of plaintiff's residence  because the only issue was whether the insurer would indemnify the insured for its liabilities. The court reasoned:
the case is not about Connecticut's standards for corporate environmental responsibility; rather, it concerns the contracts between a Wisconsin [insurance] corporation and a New Jersey business entity. In other words the issue here is not whether Connecticut will be paid, what it will be paid, or who will pay it. The issue simply is whether the construction and interpretation of contracts between a state citizen and another business entity require the payment of money by the latter to the former.
Armotek, slip op., at 11 (emphasis added). In this case, the issue is not merely one of contract construction, but of the allocation of payment of existing and future claims arising out of Sandvik Steel's polluting activities. Who will pay for clean-up is of particular interest to Pennsylvania as a matter of environmental policy. In particular, the allocation of costs for future claims against Sandvik may directly impact Pennsylvania residents.[17]
*312 It is at present undetermined whether Sandvik will be liable for further expenses associated with the remedial action plan; in fact, that determination will not be final for possibly another thirty years. During that time period, supervision by Pennsylvania courts may well be needed and the liabilities and rights of the defendants may be altered. In addition, it is unknown whether Sandvik will be sued by Pennsylvania property owners for damages resulting from seepage of pollutants from the site. Pennsylvania has the strong interests of protecting its citizens, supervising clean-up at the site and enforcing its environmental laws. New Jersey has no interest in this case beyond the construction of the CGL policies as they relate to the existing settlements of the EPA and PSWC claims. Therefore, the public interests in this case weigh heavily in favor of transfer.
In Continental Ins. Co. v. Beecham, Inc., No. 87-1275, slip op. (M.D.Pa. 24 June 1988) (Plaintiff's App., Ex. F), the court was faced with a New Jersey insured and a Pennsylvania site, but granted the defendant insurance company's motion to transfer to the District of New Jersey. Sandvik argues the Continental Ins. case supports its position that New Jersey has a greater interest than Pennsylvania in litigating the outcome of environmental insurance coverage actions although the site underlying the action is located in Pennsylvania.
This argument is unpersuasive for the same reason the rationale of the Armotek case is unpersuasive. The Continental Ins. court agreed "Pennsylvania certainly has an interest in the clean-up of the ... site." Id. at 10. The court nevertheless transferred the case to a state with no connection to the site because the court reasoned the dispute was primarily a matter of contract interpretation. Id.
The insured in Continental Ins. was not requesting declaratory judgment with respect to liability for future claims, as Sandvik has done in this case. Moreover, the court in Continental Ins. adopted a magistrate's report and recommendation which found fewer witnesses would be inconvenienced by a New Jersey forum than a Pennsylvania one. This contradicts the clear evidence in the instant case and renders that decision of less relevance.
Sandvik's reliance on the recent decision in Westinghouse Electric Corp. v. Liberty Mut. Ins. Co., 233 N.J.Super. 463, 559 A.2d 435 (App.Div.1989), is similarly misplaced. That case involved a declaratory judgment action by a large New Jersey corporation against 144 insurance companies involving over 80 environmental contamination sites in 23 states. Id. at 466, 559 A.2d 435. The Superior Court dismissed all claims related to non-New Jersey sites on the basis of forum non conveniens. In reversing the dismissal, the Appellate Division reasoned that severance of the non-New Jersey claims would work unnecessary hardship on the plaintiff, forcing it to litigate the same claims in 23 different fora. Id. at 469-70, 559 A.2d 435. The court noted "[t]he question is not how difficult it will be to try the coverage question but rather how many times [the plaintiff] is going to have to repeat the process from jurisdiction to jurisdiction." Id. at 470, 559 A.2d 435.
The Westinghouse decision is distinguishable from this case. First, it is clear this dispute involves only one site in one state; transfer will not require Sandvik to litigate claims from sites in several states. See Union Carbide Corp. v. Aetna Casualty & Surety Co., 212 Conn. 311, 320, 562 A.2d 15, 20 (1989) (distinguishing Westinghouse where threat of "fractionalizing" of claims not present). Second, New Jersey had an interest in the outcome of the Westinghouse case because eight of the contaminated sites were located in-state. Westinghouse, 233 N.J.Super. at 466, 559 A.2d 435. It is clear New Jersey has no such interest in the outcome of the instant litigation. Third, the Westinghouse court's reasoning did not address the issue whether New Jersey had a superior interest in litigating the suit relative to the interests of other states where sites were located. Id. at 470, 559 A.2d 435.
Finally, in Travelers Indemn. v. Allied Signal, Inc., 718 F.Supp. 1252 (D.Md.1989) (Defendants' Reply Brief, Ex. D), the court, in determining Maryland law was applicable *313 to an environmental claim involving Maryland sites, stated:
it would appear to be an unseemly derogation of its sovereign power for a state to decline to apply its own substantive law to matters which directly impact upon its physical environment and which seriously affect the welfare of its citizens.
Id. 718 F.Supp. at 1255. In a supplemental memorandum, the Travelers Indemn. court explicitly rejected the reasoning of the New Jersey Appellate Division in Westinghouse, supra, calling it "disturbing" and noting it may have been motivated by the desire to attract business to the state. Travelers Indemn. v. Allied Signal, Inc., 718 F.Supp. 1252, 1253 (D.Md.1989) (supplemental memorandum) (Defendants' Reply Brief, Ex. D). The Travelers Indemn. court observed that:
a state's legitimate interest in attracting corporate business does not justify its encouragement of forum shopping to its own courts or its intrusion upon the sovereign power of its sister states to make their own decisions concerning matters directly affecting their interests within their borders.
Id. 718 F.Supp. at 1258 (supplemental memorandum).
In this case, the interests of Pennsylvania in every aspect of the litigation and outcome of this dispute favor transfer to that state. The interest New Jersey has in providing a forum for an in-state resident is outweighed by Pennsylvania's interests. In addition, any prejudice or inconvenience Sandvik may incur as a result of transfer is minimal because Sandvik maintains a substantial presence in Pennsylvania.

Conclusion
The interests of Pennsylvania in litigating the outcome of this action and the convenience of the parties and non-party witnesses in this case weigh strongly in favor of the defendants' motion to transfer to the Eastern District of Pennsylvania. Therefore the defendants' motion is granted; this matter is transferred to the federal court for the Eastern District of Pennsylvania.
SO ORDERED, this 18th day of October, 1989.
NOTES
[1] National Union and Granite State have filed the following in support of this motion: Brief in Support of National Union's and Granite State's Motion to Transfer this Case to the Eastern District of Pennsylvania, dated 29 September 1989 ("Defendants' Brief"); Affidavit of Phillip Landrigan in Support of Motion to Transfer, filed 29 September 1989 ("Landrigan Aff."); Brief in Further Support of National Union's and Granite State's Motion to Transfer, dated 6 October 1989 ("Defendants' Reply Brief").

Liberty has joined in all respects of this motion, but has filed no papers in support. Letter from Martha J. Koster, Esq. to chambers, dated 29 September 1989. Continental has also joined in this motion with respect to all issues except the issue of what law is to be applied. Letter from Patricia L. Noll, Esq. to chambers, dated 29 September 1989.
[2] Sandvik has filed the following in opposition to this motion: Brief of Plaintiff in Opposition to Motion to Transfer this Action to the Eastern District of Pennsylvania, received 29 September 1989 ("Plaintiff's Opposition Brief"); Appendix in Support of Plaintiff's Opposition Brief, received 29 September 1989 ("Plaintiff's App."); Affidavit of Paul Hodgen, Plaintiff's App., Exhibit A ("Hodgen Aff."); Plaintiff's Reply Brief to Defendants' Brief, received 6 October 1989 ("Plaintiff's Reply Brief").
[3] The EPA divided the site into separate "operable units" termed the Injection Well Operable Unit and the Landfill Operable Unit. O'Hara Sanitation currently is responsible for all costs relating to the Landfill Operable Unit. The Partial Consent Decree which Sandvik executed in settlement of the EPA claims pertains only to the Injection Well Operable Unit. However, the EPA has reserved the right to proceed against Sandvik for remedial action on the Landfill Operable Unit as well. Complaint, ¶ 23; Landrigan Aff., ¶ 3.
[4] The site, although in a commercial district, is located within 560 feet of residential housing, 2,000 feet of the PSWC reservoir and 3,000 feet of a public school. Landrigan Aff. ¶ 6.
[5] Continental issued CGL policies to Sandvik covering the period from 1 November 1974 to 9 February 1976. Liberty Mutual provided coverage including the time period from 9 February 1976 to 9 February 1977, Granite State from 9 February 1977 to 1 January 1979, and National Union from 1 January 1979 to 1 January 1981. Complaint, ¶¶ 27-32.
[6] It is unclear where Sandvik maintains manufacturing facilities other than the locations discussed in this opinion. However, Sandvik asserts it maintains "various satellite locations throughout the eastern United States." Plaintiff's Opposition Brief, at 4-5.
[7] Proper venue, of course, requires the existence of personal and subject matter jurisdiction over the defendants in the transferee court. Shutte, 431 F.2d at 24; Derry Finance, 555 F.Supp. at 1045. A court must rely on facts which are a matter of record in deciding a motion for transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756-57 (3d Cir.1973). National Union is a Pennsylvania corporation and subject to personal jurisdiction in that state. 28 U.S.C. § 1391(c). The Complaint does not set forth facts with regard to the existence of personal jurisdiction in Pennsylvania over the other defendants. However, each defendant provided Sandvik with CGL policies covering Sandvik's Pennsylvania facility. The activities for which Sandvik is liable took place in that state. These facts, coupled with the defendants' express representation that "venue is proper" in the transferee forum, establish that this suit could have been brought in the Eastern District of Pennsylvania.
[8] The Gulf Oil case involved a motion to dismiss under the doctrine of forum non conveniens, but courts routinely look to the Gulf Oil factors for guidance in section 1404(a) cases. See, e.g., Piper Aircraft, 454 U.S. at 255-60, 102 S.Ct. at 265-68; Reading Metal Craft Co. v. Hopf Drive Assoc., 694 F.Supp. 98, 102 (E.D.Pa.1988); Hardaway Constr., 583 F.Supp. at 619.
[9] There is no authority in this circuit supporting Sandvik's argument that the defendants must present "clear cut and convincing" evidence in favor of transfer. Plaintiff's Opposition Brief, at 10 (citing Star Lines Ltd. v. Puerto Rico Maritime Shipping Auth., 442 F.Supp. 1201, 1207 (S.D.N.Y.1978)). In fact, prior to the decision of the district court in Kisko, supra, courts in this circuit required the party requesting transfer to show only a preponderance of the evidence. Atlantic Richfield Co. v. Stearns-Roger, Inc., 379 F.Supp. 869, 871 (E.D.Pa.1974); Popkin v. Eastern Airlines, Inc., 253 F.Supp. 244, 246 (E.D.Pa. 1966); Paragon-Revolute Corp. v. C.F. Pease Co., 120 F.Supp. 488, 490 (D.Del.1954); United States v. Gerber, 86 F.Supp. 175, 178 (E.D.Pa.1949). The defendants have met their burden under the higher standard, having shown more than a preponderance of the evidence in favor of transfer. Therefore, it is unnecessary to determine which standard is correct.
[10] Other potentially responsible parties named by the EPA and located in Pennsylvania are: Scott Paper Co.; Gould, Inc.; Alumax Aluminum Corp.; Childers Products Co., Inc.; Smithkline Beckman Corp. and O'Hara Sanitation. One other potentially responsible party is located in New Jersey and two have unknown addresses. Landrigan Aff., ¶ 12 & Ex. E.
[11] The defendants have submitted an affidavit listing two corporations and ten individuals involved in the feasibility study and remedial action plan. Landrigan Aff. ¶¶ 13-14 & Ex. F.
[12] EPA personnel involved in the evaluation of conditions and remedial action at the site include: Joseph J. Melvin, Samuel Rotenberg, Ph.D. and Walter F. Lee. Landrigan Aff., at 7 n. 2.
[13] The Armotek court went on to find the public interests favored maintaining the action in New Jersey. This portion of the Armotek opinion will be discussed infra.
[14] Sandvik attempts to contradict the finding in Armotek regarding site specific proof with two recent District of New Jersey opinions declining to transfer environmental insurance coverage claims. These opinions, in addition to being unpublished, are unpersuasive as support for Sandvik's position. The first opinion, Hoeschst Celanese Corp. v. American Motorists Co., No. 89-1025 (D.N.J. 29 September 1989) (Plaintiff's Reply Brief, Ex. A), contains no discussion of the facts, issues or arguments before the court. The second opinion, F.W. Saybolt & Co. v. National Union Fire Ins. Co., No. 88-2434 (D.N.J. [date unknown]), has not yet been transcribed and is unavailable for review.
[15] This opinion does not address what law will ultimately apply to this action. That decision will be left for the transferee court to make, applying New Jersey choice of law principles. Van Dusen v. Barrack, supra.
[16] The Complaint states "Sandvik ... may be subject to civil suits commenced by other litigants relating to releases or threatened releases of contaminants from the [site]." Complaint. ¶ 24.
[17] Although there is no evidence in the record to suggest Sandvik cannot afford to pay the settlements of the EPA and PSWC claims, the resolution of the issue "who will pay" would become particularly important to Pennsylvania if Sandvik were not able to pay for either the existing settlements or potential future claims.