### The MARYLAND CASUALTY COMPANY

v.

### ARMCO, INC.

### Civ. No. Y–85–1396.

United States District Court,
D. Maryland.

Sept. 8, 1986.

Jonathan D. Smith, Stephen J. Immelt, Baltimore, Md., Thomas W. Brunner, Jeffrey F. Liss, Laura Foggan, Washington, D.C., for plaintiff.

Mark R. Engel, Benjamin Rosenberg, Robert J. Proutt, Baltimore, Md., for defendant.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

The Maryland Casualty Company seeks a declaratory judgment that it does not have a duty to defend a Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") suit brought against its insured, Armco, Inc., and a host of other defendants in the Western District of Missouri. *United States v. Conservation Chemical Co.*, No. 82–0983–CV–W–5. Maryland Casualty issued general business insurance policies to Armco from 1966 to 1983. The parties do not dispute the terms of those insurance policies or the underlying facts in the *Conservation Chemical Co. ("CCC")* litigation, and have filed cross motions for summary judgment. No hearing is necessary. Local Rule 6.

The Environmental Protection Agency's complaint in the *CCC* case alleges that a toxic waste site in Kansas City, owned and maintained by the Chemical Conservation Company, is leaking hazardous substances into the water tables of the Missouri and Blue Rivers. The complaint names Armco as one of several defendants who generated hazardous wastes present at the site. The parties in this case have represented to the Court that Armco hired Conservation Chemical to dispose of its wastes, and that Conservation Chemical improperly stored Armco's wastes at the site over a period of

years. Armco thus appears to be a "person who ... arranged with a transporter for transport for disposal or treatment, of hazardous substances ... at any facility owned or operated by another party" under 42 U.S.C. § 9607(a)(3). The EPA complaint alleges that, as such, Armco is strictly liable for "all costs of removal or remedial action incurred by the United States Government or a state" under 42 U.S.C. § 9607(a)(4)(A).

The contracts between Maryland Casualty and Armco do not specify whether the parties intended the contracts to be interpreted according to the law of a particular jurisdiction. In a diversity case such as this, the Court must look to the choice of law rules of Maryland, the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Maryland follows the rule of *locus contractus*, applying the law of "the place where the last act is performed which makes an agreement a binding contract." *Grain Dealers Mutual Insurance Co. v. Van Buskirk*, 241 Md. 58, 65–66, 215 A.2d 467 (1965); *Sun Insurance Office, Ltd. v. Mallick*, 160 Md. 71, 81, 153 A. 35 (1931); *Haines v. St. Paul Fire & Marine Insurance Co.*, 428 F.Supp. 435 (D.Md.1977); *Riviera Beach Volunteer Fire Co., Inc. v. Fidelity & Casualty Co. of New York*, 388 F.Supp. 1114, 1119–20 (D.Md.1975).

Counsel for both parties have orally represented to the Court that the insurance contracts at issue were signed in Maryland, and agree that Maryland law applies. The Court finds no dispute of material fact on this issue, and will apply Maryland law. "Maryland has not adopted the rule, followed in many jurisdictions, that an insurance policy is to be most strongly construed against the insured. If the language of an insurance contract is ambiguous, however, construction is for the jury, and the ambiguity is to be resolved against the company who prepared the policy and in favor of the insured." *National Grange Mutual Insurance v. Pinkney*, 284 Md. 694, 705, 399 A.2d 877 (1979) (citations omitted), *quoting Government Em-*

*ployees Insurance v. DeJames,* 256 Md. 717, 720, 261 A.2d 747 (1970).

In its motions for summary judgment, Maryland Casualty argues that it is not obligated to defend Armco in the *CCC* litigation because the EPA's complaint does not assert claims for legal "damages" within the meaning of Maryland Casualty's policies. Because the Court finds that Maryland Casualty is entitled to summary judgment on this issue, it is unnecessary to consider the other contentions of the parties.

The insurance contracts limit Maryland Casualty's duty to defend to a "suit against the insured ... seeking damages," and limit the duty to indemnify to "sums which the insured shall become legally obligated to pay as damages." Policy No. 31R–0038550, Defense, Settlement, Supplementary Payments, Subsection (a); Coverage C—Property Damage Liability—Except Automobile. The word "damages" is not ambiguous in the insurance context. Black letter insurance law holds that claims for equitable relief are not claims for "damages" under liability insurance contracts. *See, e.g., Haines v. St. Paul Fire & Marine Insurance Co.,* 428 F.Supp. 435 (D.Md.1977) (Blair, J.); *Aetna Casualty and Surety Co. v. Hanna,* 224 F.2d 499 (5th Cir.1955); *Desrochers v. New York Casualty Co.,* 99 N.H. 129, 106 A.2d 196 (1954).

The government's *CCC* complaint sought injunctive relief against Armco, as well as reimbursement for "all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan," under 42 U.S.C. § 9607(a)(4)(A). Judge Wright of the Western District of Missouri appointed a special master, Professor Robert H. Freilich of the University of Missouri at Kansas City, to help resolve the *CCC* litigation. The special master recommended that a *CCC* defendant's request for a jury trial be denied, on the grounds that the government's suit for response costs were analogous to an equitable claim for restitution. *See* Special Master's Rec-

ommendation Regarding General Dynamics Corporation's Demand for a Jury Trial (April 29, 1985). Judge Wright approved the special master's recommendation by Order dated May 14, 1985.

The Seventh Amendment does not provide a right to a jury trial "if viewed historically the issue would have been tried in the courts of equity...." 9 Wright & Miller, *Federal Practice and Procedure,* Civil § 2302, p. 15 (1971). Judge Wright's Seventh Amendment analysis of the CERCLA statutory scheme followed the unanimous decisions of other courts faced with the same issue. This Court has also denied a demand for a jury trial in a CERCLA case. *See United States v. Dickerson,* 640 F.Supp. 448, 453 (1986); *see also United States v. Mottolo,* 605 F.Supp. 898, and cases cited at 913 (D.N.H.1985).

Recently, the special master recommended that the government's *CCC* complaint alleges claims for "damages" for purposes of comprehensive general liability insurance policies. *See* Special Master's Recommendations on Motions for Summary Judgment Regarding Insurance and Indemnification, memo. op. at 132 (June 27, 1986) (hereafter "Special Master's Recommendations"). Maryland Casualty has represented to the Court that Judge Wright entered an order adopting the special master's recommendations on July 10, but said that he would vacate the order as to Maryland Casualty and two other insurers who had settled before entry of the order. Judge Wright apparently has deferred entry of that order to vacate pending further settlement negotiations between all parties still involved. *See* letter to the Court from counsel for Maryland Casualty, July 18, 1986, pp. 1–2.

In this posture, the special master's recommendations are not *res judicata* against Maryland Casualty. They are also unpersuasive as precedent. Professor Freilich, in some detail, explained why actions to recover response costs alleged "property damage" under the insurance contracts. Special Master's Recommendations at pp.

63–81. This Court agrees with the special master's common sense conclusion that toxic waste dumps that contaminate the environment cause "property damage;" it reached the same result in *Mraz v. American Universal Insurance Co.*, 616 F.Supp. 1173, 1177 (D.Md.1985), appeal filed, No. 85–2399 (4th Cir. November 26, 1985). The "property damage" issue is distinct from the "damages" issue, however. As Professor Freilich noted, the typical business liability policy reads: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... property damage...." Special Master's Recommendations at p. 70. In the unambiguous wording of the policy, even if a lawsuit against the insured alleges "property damage," it must also make claims for "damages" before the insurer becomes obligated to defend or indemnify.

This Court was not presented with the "damages" issue in the *Mraz* litigation. *See* Pretrial Order filed June 26, 1985, section 2(c), pp. 8–10. Maryland Casualty squarely presented Special Master Freilich with the "damages" issue in the *CCC* litigation, and he acknowledged that it was different than the "property damage" issue noting:

> To the extent that Maryland [Casualty]'s argument once again raises the question of whether "cleanup costs" constitute "property damage" for purposes of liability insurance coverage, the Special Master rejects Maryland's argument. [The special master had already rejected that argument at pp. 63–81 of his memorandum.] To the extent that Maryland's argument interprets "damages" as compensation for injury or loss and excludes the cost of complying with equitable or injunctive orders, the Special Master believes the argument interprets "damages" too narrowly. The Special Master interprets "damages" to be sums which the insured is obligated to pay by reason of liability imposed by law, and adopts the reasoning of the Court in *United States Aviex Co. v. Travelers Ins. Co.*,

125 Mich.App. 579, 336 N.W.2d 838 (1983).

Special Master's Recommendations at 132.

To adopt the reasoning of the *Aviex* decision is to adopt no reasoning at all. In that case, the insured operated a chemical plant in Niles, Michigan that had been destroyed by fire. Chemicals from the plant mixed with water used to put out the fire and percolated into the ground, contaminating the groundwater. The State of Michigan ordered the insured to clean up the contamination. The insured paid a consulting firm to analyze the damage, but dragged its feet when the consultants estimated that cleanup operations would cost over a million dollars. The State of Michigan threatened the insured with legal action. Under Michigan's statutory scheme, the State could have sought an order for abatement of water pollution, a criminal complaint, injunctive relief, or damages for injuries done to the national resources of the state. 336 N.W.2d 841, 843. Before the State pursued any of these remedies, the insured sued its insurer for a declaratory judgment. The trial court held that the insurer was obligated

> to defend any claim or action and to pay for any damages to the extent of the policy's monetary limits determined by a tribunal of competent jurisdiction, which damages will include the costs of plaintiff imposed by such tribunal or resulting from a determination by such tribunal for correcting the chemical contamination of the percolating or ground water underneath plaintiff's premises caused by the fire.... The obligation of the defendant includes reimbursement of plaintiff for the costs and expenses of any study and testing incurred by the plaintiff to date.

336 N.W.2d at 841.

On appeal, the insurer argued that "damages" did not include costs incurred in complying with equitable or injunctive orders. The Court of Appeals of Michigan affirmed. The *Aviex* court recognized that "Defendant's argument is persuasive and supported by decisions from several other

jurisdictions," and cited *Aetna Casualty Co. v. Hanna, supra; Desrochers v. New York Casualty Co., supra;* and *Ladd Construction Co. v. Insurance Company of North America,* 73 Ill.App.3d 43, 29 Ill. Dec. 305, 391 N.E.2d 568 (1979). 336 N.W.2d 842–43.

The *Aviex* court declined to follow this "persuasive" precedent, however, holding:

> In our opinion, this reasoning interprets "damages" too narrowly.... [T]he Attorney General is empowered to file a suit "to recover the full value of the injuries done to the natural resources of the state ...". [sic] This language clearly indicates the state's interest in its natural resources. Defendant agrees that the contamination of subterranean and percolating water as a result of the fire is "physical injury to tangible property" within the terms of the insurance policy [the equivalent of the "property damage" issue]. If the state were to sue in court to recover in traditional "damages," [sic] including the state's costs incurred in cleaning up the contamination, for the injury to the groundwater, defendant's obligation to defend against the lawsuit and to pay damages would be clear. It is merely fortuitous from the standpoint of either plaintiff or defendant that the state has chosen to have plaintiff remedy the contamination problem, rather than choosing to incur the costs of clean-up itself and then suing plaintiff to recover those costs.

336 N.W.2d 843.

It was no coincidence that the *Aviex* court did not cite a single authority in support of its "mere fortuity" argument, because that argument violates one of the major tenets of black letter insurance law. An insurer has an obligation to assess its duty to defend and indemnify against the allegations in the complaint alone. *See generally, Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 347 A.2d 842 (1975); *Board of County Commissioners of the County of Larimer v. Guarantee Insurance Co.,* 90 F.R.D. 405, 407–408

(D.Colo.1981); *Ladd Construction Co., supra,* 391 N.E.2d at 572–73:

> Should we indulge in speculation as to whether a court by exercising its inherent power might award damages when none were sought and then conclude that such inherent power exists and insurance company [sic] must defend an action, then we would by speculation be altering the responsibilities between parties as set forth in an insurance contract. Moreover, a giant if not final step would have been taken in support of a proposition that an insurance company would be under an obligation to defend all suits, regardless of policy provisions or allegations contained in a complaint. Such a result could well create havoc as to both the insurers and the insureds.

Traditionally, courts have found no insurance coverage for the costs of complying with an injunction even in cases where the suits could have been brought for damages. *See Aetna Casualty and Surety Co. v. Hanna, supra,* 224 F.2d 503; *Ladd Construction Co. v. Insurance Co. of North America, supra,* 391 N.E.2d at 572–73; *Garden Sanctuary, Inc. v. Insurance Co. of North America,* 292 So.2d 75, 76–77 (Fla.App.1974). Maryland Casualty concedes that the government could have brought its *CCC* suit under 42 U.S.C. § 9607(a)(4)(C) for "damages for injury to, destruction of, or loss of natural resources," and that such a suit would have alleged claims for "damages" under the insurance contracts. But, the government chose not to bring suit under the "damages" provisions of CERCLA, apparently preferring the equitable remedy of restitution. Maryland Casualty is obligated to defend or indemnify real lawsuits, not hypothetical ones.

Professor Freilich and the *Aviex* court tried to get around this result by saying that damages to the environment are measured by the costs of clean-up. *See* Special Master's Recommendations at 80, 132; *Aviex, supra,* 336 N.W.2d 843. Armco adds a wrinkle to that argument by suggesting that in claims for clean-up, money

is the "essence" of the government's claims, unlike in other equitable suits, which presumably focus on injunctive relief. The difficulty with these arguments is that they apply with equal force to the Seventh Amendment analysis of CERCLA clean-up suits; clean-up costs cannot be the equivalent of damages, or "essentially" monetary, for purposes of interpreting an insurance contract, and also be equitable for Seventh Amendment purposes.

The Special Master's suggestion that "damages" are "sums which the insured is obligated to pay by reason of liability imposed by law" appeals to common sense. That is why people buy insurance, after all, and why should outdated distinctions between law and equity get in the way? It is true that no practical difference exists between sums which the insured must pay the court under some equitable remedy as opposed to sums payable for damages. But there is also no practical difference between sums which the insured must pay the court and sums which the insured must pay to comply with an injunctive order. Obviously, an insurer cannot be required to pay the costs of its insured in complying with every new government regulation.

Insurance contracts must draw the line somewhere, and under law clearly established by 1955, these contracts drew the line at the historic division between law and equity. Every court that has considered the question has held that CERCLA response cost suits fall on the equity side of the line. Arbitrary as it may appear, Maryland Casualty is entitled to the benefit of its bargain.

### ORDER

In accordance with the attached Memorandum, it is this day of September, 1986, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion of Maryland Casualty for summary judgment BE, and the same IS, hereby GRANTED;

2. That the motion of Armco, Inc. for summary judgment BE, and the same IS, hereby DENIED;

3. That the cross-motion for summary judgment by Maryland Casualty BE, and the same IS, DENIED AS MOOT;

4. That the Pretrial Order in *Mraz v. American Universal Insurance Co.*, 616 F.Supp. 1173, and counsel for Maryland Casualty's letter to the Court dated July 18, 1986, be made part of the record in this case;

5. That judgment BE, and the same IS, ENTERED in favor of Maryland Casualty; and

6. That a copy of this Memorandum and Order be mailed to counsel.