**John Joseph (Jay) BONSTINGL**

v.

**MARYLAND BANK, N.A. Visa U.S.A., Inc. and Visa International, Inc.**

**Civ. No. S 86–1477.**

United States District Court, D. Maryland.

June 17, 1987.

Joel Marc Abramson, Talkin and Abramson, Fox & Schwartz, Columbia, Md. and Leonard A. Orman, Baltimore, Md., for plaintiff.

Charles P. Goodell, Jr., Richard M. Barnes, Semmes, Bowen & Semmes, Baltimore, Md., for defendant Maryland Bank.

Donald E. Sharpe, M. Rosewin Sweeney, Piper & Marbury, Baltimore, Md., for defendant VISA.

SMALKIN, District Judge.

This case is before the Court on the defendants' motions to dismiss the plaintiff's complaint.

The basic facts are not in substantial dispute, and, for the purposes of these motions, the Court takes the facts as alleged by the plaintiff to be true. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The basic, largely undisputed facts, as gleaned from the parties' filings, are as follows: While on vacation in the Greek Isles, the plaintiff, a holder of a VISA card issued by VISA International Services Association through Maryland Bank, N.A.,[1] used the card to purchase certain jewelry on the island of Santorini, Greece. The merchant accepted plaintiff's VISA card charge in payment and allowed the plaintiff to leave with the jewelry. When the merchant, later on, attempted to confirm that the plaintiff had credit available for the purchase, he was informed that credit was not available, because the plaintiff's VISA account was already near or at its established limit, and the purchase in question put it over the limit. This resulted in the merchant filing a criminal complaint against the plaintiff, who was arrested and held in custody by the Greek authorities for several days. Plaintiff apparently had someone in the United States contact the defendants (the complaint does not identify the name of

1. VISA International Services Association disputes its role in the issuance of the plaintiff's card, claiming that only Maryland Bank, N.A. was the issuer. The dispute is not material to these motions.

this person, nor does it specify the defendant(s) contacted), in an attempt to get his credit limit raised so he could be released from jail. The VISA credit limit was raised by $300.00 by defendant Maryland Bank. Two telexes were sent by Maryland Bank to Greece. The first, incorrectly referring to plaintiff's Mastercard account, rather than his VISA account, was sent on July 12, 1985. It stated that plaintiff was a valued customer of the Bank in good standing. It was received in Greece on July 15, 1985, in the consular section of the American Embassy. A second telex, which was both sent to and received in Greece on July 15, 1985, correctly referred to plaintiff's VISA account number and, according to the complaint, resulted in plaintiff's release from incarceration. (It is noted that both telexes stated that plaintiff was a valued Maryland Bank customer in good standing, and the account numbers referenced in the two telexes were identical, except for the Mastercard and VISA prefixes, 5329 and 4313, respectively.)

The complaint asserts two theories of recovery. The first, asserted in Count I, is that the defendants breached their duty of due care in the wording of the July 12, 1985 telex, which referred to the Mastercard account rather than the VISA account, and that plaintiff suffered damage as a proximate result of this negligence, in the form of prolonged incarceration (by three or four days) in a Greek jail. Plaintiff's Count II asserts that the defendants had a duty to warn the plaintiff that, if he exceeded his VISA credit limit in Greece (or in other countries outside of the United States), he could be incarcerated as a result of a criminal charge of fraud.

The case was transferred to the undersigned District Judge by Judge Black in March, 1987. By a scheduling letter order of March 27, 1987, confirming a telephone conference in this case (which conference resulted from a discovery dispute), the Court determined in light of the discovery history of the case that further discovery should be stayed pending a test of the legal sufficiency of the complaint by way of motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). It appeared to the Court that, given the course of discovery to that date, and given the nature of the allegations of the complaint, further discovery would be pointless in connection with a dismissal motion under Rule 12(b)(6). Therefore, the Court set a schedule for the filing of dismissal motions by the defendants. Those motions were duly filed, and the Court extended the plaintiff's response time twice, once by letter of April 13, 1987, and again by marginal order of April 27, 1987, endorsed on a letter from plaintiff's counsel dated April 24, 1987, so that plaintiff could adequately respond to the points of Greek law raised in defendants' motions. By letter of April 13, 1987, this Court put plaintiff on notice, that at least as to Count I, the Court would treat the defendants' motions as motions for summary judgment, in view of the factual assertions in the affidavits of defendants' Greek legal experts. The plaintiff was reminded of his obligation to submit appropriate countering factual material under Fed.R.Civ.P. 56(e) and *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The plaintiff has now submitted his response to the defendants' motions to dismiss. The motions will be granted, for reasons now to be stated.

With regard to Count I, the Court determines under choice of law principles of Maryland law, *see Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), that a Maryland court would undoubtedly apply Greek law to determine defendants' liability for negligence. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir.1986). The Court determines, as a matter of law under Fed.R.Civ.P. 44.1, having considered the affidavits of defendants' Greek law experts and plaintiff's Greek law expert, that under the domestic law of Greece, the defendants are not liable in tort for the alleged prolonged detention of the plaintiff on account of the mistaken July 12 telex reference to the Mastercard account rather than the VISA account. The Court has determined as a matter of law that the affidavits of Professor Yiannopoulos and Mr. Sioufas accurately state the domestic law of Greece, and

that, under Greek law, plaintiff has no claim under Count I. The Court notes that the defendants' experts cogently state the reasons supporting their conclusion that there was no causal connection between the alleged negligence of the defendants in sending the first telex and the prolonged detention of plaintiff, in light of the Greek law of crimes and offenses and Greek criminal procedures. The contrary affidavit of plaintiff's expert, Mr. Costas E. Roussos, is simply not convincing on the point, and the conclusory statement of causal connection on page 12 of the Roussos affidavit is not nearly as convincing to the Court on the Greek law involved as are the cogent points made by the defendants' experts in their affidavits.

██ Alternatively, the Court determines that, should the doctrine of *renvoi* or other applicable choice of law principles result in making Maryland substantive law govern as to Count I, the result would be the same. It is obvious that the question of whether the plaintiff's prolonged detention was a proximate result of the mistaken telex would necessarily have to be determined with reference to Greek criminal law and procedure. This Court has already determined, under Fed.R.Civ.P. 44.1, that under Greek law and procedure the defendants' alleged negligence with regard to the Mastercard telex was not a proximate or other legal cause of the plaintiff's prolonged detention, but that such detention was an independent product of Greek criminal procedure, unaffected by the erroneous telex.

Because, as a matter of Greek tort law, determined by me under Fed.R.Civ.P. 44.1, defendants are not liable under Count I, and because as a matter of Maryland tort law (since the question of proximate causation in this case obviously depends solely upon Greek law), the plaintiff could not under any circumstances prove the requisite causal link to establish tort liability under Maryland's tort law, the defendants are clearly not liable under Count I, and they are entitled to summary judgment as to Count I of the complaint, there being no

genuine dispute as to any material fact. Fed.R.Civ.P. 56(a).

██ With regard to Count II of the complaint, the Court determines as a matter of law, Fed.R.Civ.P. 44.1, that the defendants had no duty under Greek law to warn the plaintiff of the possible consequences of exceeding his credit card limit in Greece. On this point, the affidavits of defendants' experts Yiannopolous and Sioufas are clear and convincing, and the plaintiff's expert's affidavit is utterly unconvincing.

To the extent that a Greek court would apply the substantive law of Maryland, or that Maryland's substantive law might apply to Count II under *Klaxon* (notwithstanding the usual Maryland choice of law rule), this Court holds that Maryland law would not recognize tort liability under the facts pleaded in Count II. *See Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir. 1981). The plaintiff has pointed to no cases under Maryland law or in any jurisdiction of the United States that recognize tort liability for failure to warn of the consequences of violation of the laws of foreign countries, with regard to extensions of credit, in which the issuer of a credit card has been held to have a duty of the sort sought to be recognized in this case. In fact, plaintiff has pointed to no case that even comes close to establishing the principle he urges upon this Court. Indeed, the lack of any case law recognizing such a duty is quite understandable, because it would be utterly preposterous to hold that the issuer of a credit card must provide its cardholders with legal advice or a compendium of laws regulating the use of credit cards overseas. It is the traveller's duty to acquaint himself with the rules and customs of the places he visits, not the credit card issuer's duty to warn him that his inappropriate use of the card, by exceeding credit limits (there is no contest that plaintiff's credit limit was exceeded by the purchase in question), could result in prosecution under local laws. In short, it is a part of the common knowledge of a reasonable person that he or she must follow the maxim, "When in Rome, do as the Romans

do."[2] It is up to the traveller to find out what the Romans (or, in this case, the Greeks) do; the credit card issuer has no duty to educate him. Indeed, the issuer cannot know just where in the world a cardholder might travel and use the card. Given the number of such places, the complexity of their criminal laws, and the need to update warnings and explanations, every credit card holder in the United States would have to be presented with a volume as unwieldy as Burke's Peerage, supplemented by a looseleaf service akin to Law Week. Neither the law of Maryland nor the law of any other sensible jurisdiction would countenance such a ridiculous rule. A defendant certainly has a duty to warn another of unreasonable risks of harm or dangers posed to such other by the defendant's *conduct*, especially latent dangers, *see, e.g., Moran v. Faberge*, 273 Md. 538, 332 A.2d 11 (1975), but there is no duty to warn anyone of the consequences of his own folly where the defendant has not put the injured party in any sort of peril. The defendants' conduct in issuing plaintiff a VISA card put him in no position of peril. Therefore, the Court holds as a matter of law that Count II of plaintiff's complaint fails to state a claim under Greek or Maryland law, upon which relief can be granted, and it will thus be dismissed. Fed.R.Civ.P. 12(b)(6).

Finally, in his response to defendants' motions, the plaintiff states that he "will apply" to the Court to amend the complaint so as to include a count for breach of contract and a count of strict product liability under § 402A, *Restatement, Second, Torts* (1965). The plaintiff has not sought leave to file any such amendment, and the complaint will be dismissed forthwith by separate order to be entered in conformity with this Memorandum Opinion. Furthermore, the Court observes that, had the plaintiff in fact made proper motions to amend, the Court would have denied them as not in the interests of justice and utterly frivolous. Fed.R.Civ.P. 15(a).

For the reasons stated, an order will be entered separately granting the motions of defendants to dismiss, as follows, *viz.*, as a motion for summary judgment as to Count I of the complaint, and as a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), as to Count II of the complaint. That order will be a final judgment closing this case.

## ORDER AND JUDGMENT

For the reasons stated in the foregoing Memorandum, IT IS, this 17th day of June, 1987, by the Court, ORDERED and ADJUDGED:

1. That the defendants' motions to dismiss, treated as motions for summary judgment BE, and the same hereby ARE, GRANTED as to Count I of the complaint;

2. That summary judgment BE, and the same hereby IS, entered in favor of defendants against the plaintiff, as to Count I;

3. That defendants' motions to dismiss BE, and the same hereby ARE, GRANTED as to Count II of the complaint, for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6);

4. That the complaint BE, and the same hereby IS, DISMISSED, for failure to state a claim upon which relief can be granted as to Count II;

5. That this case BE, and the same hereby IS, CLOSED; and

6. That the Clerk of Court mail copies of the foregoing Memorandum and of this Order and Judgment to counsel for the parties.

2. Or, as classically stated, "Si fueris Romae, Romano vivito more; si fueras alibi, vivito sicut ibi." St. Ambrose (c. 340–397).