**EASTERN STAINLESS CORPORATION**

v.

**AMERICAN PROTECTION INSURANCE COMPANY.**

**Civ. A. No. WN–93–304.**

United States District Court,
D. Maryland.

Aug. 10, 1993.

---

Cyril V. Smith, Donald J. McCartney, and Zuckerman, Spaeder, Goldstein, Taylor & Better, Baltimore, MD, for plaintiff.

Anthony J. Breschi, and Jordan, Coyne, Savits & Lopata, Baltimore, MD; and Ronald B. Hamilton, and Cozen & O'Connor, Philadelphia, PA, for defendant.

## MEMORANDUM

NICKERSON, District Judge.

Before the Court is Defendant's Motion to Dismiss (Paper No. 4). Plaintiff has filed an Opposition (Paper No. 7) and Defendant has Replied (Paper No. 10).[1] Plaintiff has filed a Motion for Leave to Amend Complaint (Paper No. 14) which Defendant opposed (Paper No. 15). Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and Defendant's Motion to Dismiss should be denied and that Plaintiff's Motion for Leave to Amend Complaint should be granted.

### I. BACKGROUND

This diversity action arises out of an insurance coverage dispute. Defendant American Protection Insurance Company ["American"] contracted to insure Plaintiff Eastern Stainless Corporation ["Eastern"] against losses under a standard fire insurance policy. On February 3, 1990 a transformer on Eastern's property failed, causing an electrical fire which damaged the surrounding plant and equipment, as well as the transformer itself. Eastern filed a claim and American made a total payment of $275,419.54 to Eastern. In its Complaint, Eastern alleges that American still owes a balance of more than $900,000.00 under the insurance policy and that American's failure to pay this amount was "willful, wrongful, without justification and in bad faith." Complaint at ¶ 13. Eastern seeks a determination of American's obligations under the insurance policy, costs and attorneys' fees, as well as compensatory and punitive damages.

American moves to dismiss the bad faith claim and the claim for punitive damages for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). American argues that Maryland law is applicable and that Maryland does not recognize a cause of action for bad faith, nor does Maryland allow for the recovery of punitive damages based on a bad faith claim. Eastern

---

1. Plaintiff also filed a Motion for Leave to File a Surreply (Paper No. 11) which Defendant opposed (Paper No. 12). Because the Court finds that Defendant's Reply raised new issues that warranted a response, Plaintiff's motion will be granted. Defendant also filed a surresponse (Paper No. 13).

counters that Pennsylvania law applies, and that, by statute, specifically Title 42, Section 8371, Pennsylvania created a cause of action for bad faith failure to pay an insurance claim which permits the award of punitive damages and attorneys' fees. The Court concludes that Pennsylvania law applies, that Pennsylvania recognizes a cause of action for bad faith and, therefore, American's motion should be denied.

In Plaintiff's Motion for Leave to Amend Complaint, Plaintiff seeks to add a third count to clarify its claim that American's bad faith refusal to pay entitles Eastern to attorneys' fees and punitive damages under Section 8371. In its opposition to this motion, Defendant concedes that if its Motion to Dismiss is denied, Plaintiff's Motion for Leave to Amend should be granted. The Court will grant Plaintiff's motion.

## II. CHOICE OF LAW

### A. The General Rule—Lex Loci Contractus

The district court sitting in diversity in Maryland applies the substantive law of the State of Maryland, and follows the decisions of Maryland state courts regarding choice of law rules. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In Maryland, the general rule, when determining which law controls the enforceability and effect of a contract, is to apply the principle of *lex loci contractus. Kramer v. Bally's Park Place,* 311 Md. 387, 535 A.2d 466 (1988). Under this principle, the law of the jurisdiction where the contract was made determines the validity of the contract. *Bethlehem Steel v. G.C. Zarnas & Co.,* 304 Md. 183, 188, 498 A.2d 605 (1985); *Traylor v. Grafton,* 273 Md. 649, 660, 332 A.2d 651 (1975). The place where the contract is made is "the place where the last act is performed which makes the agreement a binding contract." *Riviera Beach Vol. Fire Co., Inc. v. Fidelity & Cas.*

*Co. of New York,* 388 F.Supp. 1114, 1120 (D.Md.1975) (citing *Grain Dealers Mut. Ins. Co. v. Van Buskirk,* 241 Md. 58, 65–66, 215 A.2d 467 (1965)).

Under Maryland conflicts rules, the last act performed which renders an insurance contract binding, is "[t]ypically ... where the policy is delivered and the premiums are paid." *Sting Security, Inc. v. First Mercury Syndicate, Inc.,* 791 F.Supp. 555, 558 (D.Md.1992).[2] If, however, the insurance policy provides that "it *shall not be valid until it is countersigned* by an officer or agent of the company, *the place of countersigning is* held to be *the place of the making of the contract.*" *Ohio Casualty Insurance Co. v. Ross,* 222 F.Supp. 292, 295 (D.Md. 1963) (emphasis in original); *accord Maryland Casualty Co. v. Armco, Inc.,* 643 F.Supp. 430, 431 (D.Md.1986), *aff'd,* 822 F.2d 1348 (4th Cir.1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988); *Riviera Beach,* 388 F.Supp. at 1119–20.

In the present case, the insurance policy, # 3ZG001304–02, provides, "this Policy shall not be valid unless countersigned by the duly authorized Agent of the Company." Defendant's Exhibit A at 1. The first page of the policy indicates that it was countersigned in Pennsylvania. *Id.* Since the insurance policy in the present case required a countersignature and because the policy was signed in Pennsylvania, the Court concludes that the place of the making of the contract was Pennsylvania. Therefore, the Court would ordinarily apply Pennsylvania law in an action concerning this policy.

### B. The Renvoi doctrine

American seeks to avoid this result by arguing that the Court should apply the doctrine of "*renvoi.*" Under that doctrine, a Maryland court would look to the law of the state whose law is applicable under *lex loci contractus* to determine if that state would refer back to Maryland law for deciding substantive issues. If the determination is made

**2.** American initially argued, perhaps assuming that delivery and payment were made in Maryland, that this principle is applicable in the case *sub judice.* Reply at 2 n. 1. After Eastern noted in response that the policy was delivered in Pennsylvania and the payment was made in New Jersey, Surreply at 2 n. 2, American apparently abandoned this argument.

that the foreign state would refer to Maryland law, the Maryland court then applies Maryland law. *Travelers Indemnity Co. v. Allied–Signal, Inc.*, 718 F.Supp. 1252, 1253–54 (D.Md.1989).

Were the Court to follow the doctrine of *renvoi* in the instant case, Maryland law would, most likely, be applied. Under *renvoi*, the Court would look to Pennsylvania law to determine what law a Pennsylvania court would apply had the action been filed there. Pennsylvania has adopted a combination of the "interest analysis" and the Restatement (Second) of Conflicts of Laws approach to resolve choice of law questions. *Triangle Publications v. Liberty Mutual Ins. Co.*, 703 . F.Supp. 367, 369 (E.D.Pa.1989). The "interest analysis", requires a court to determine which state has the most significant contacts with the controversy. *Id.* Under the Restatement (Second), the principle location of the risk is "given greater weight than any other single contact." Restatement (Second) of Conflicts of Laws § 193 comment b. As the risk that Eastern sought to shift, by way of insurance coverage, was located in Maryland, a Pennsylvania court would probably determine that Maryland law applies.

■■■ American contends that courts can routinely employ *renvoi* to pierce "false conflicts." The case law of both Maryland courts and this Court, however, dictates that *renvoi* is reserved for exceptional situations.

In *Travelers Indemnity*, this Court held that the *renvoi* doctrine may be applied "in cases involving issues of important public policy...." 718 F.Supp. at 1253–54. *Travelers Indemnity* involved the recoverability of costs incurred for pollution-related cleanup and pollution prevention measures under a liability insurance policy. This Court concluded that these issues involved "extremely important questions of insurance law and environmental policy" because they are "matters which directly impact upon [Maryland's]

physical environment and which seriously affect the welfare of its citizens." *Id.* at 1254, 1255. Considering the strength of the public policy implicated in the resolution of those matters, this Court was able to distinguish the case then before it from the Fourth Circuit's statement of the general rule that, "Maryland does not apply the doctrine of *renvoi.*" *Id.* at 1257 (quoting *Bonstingl v. Maryland National Bank, N.A.*, 841 F.2d 1122 (4th Cir.1988), *unpublished opinion affirming*, 662 F.Supp. 882 (D.Md.1987)).

In an unreported decision, *Connecticut Mutual Life Insurance Co. v. Gastman*, Civ. Action No. HAR–89–1629, 1990 WL 199317 (D.Md. December 5, 1990), this Court considered, and rejected, the application of the doctrine of *renvoi* in the context of an insurance dispute. The plaintiff insurance company brought the action to rescind a life insurance policy for alleged misrepresentations made by the defendant in his application. The Court observed, "[i]n general, Maryland does not apply the doctrine of *renvoi.* However, if the law of the other jurisdiction is contrary to a *strongly voiced public policy* in Maryland, Maryland courts will [apply the doctrine]." *Id.* at *14 (emphasis added, citations omitted). The Court, finding no strongly voiced public policy, concluded that the action "d[id] not fall into the *limited category* in which Maryland courts will use *renvoi.*" *Id.* (emphasis added).[3]

Eastern also cites *Allstate Insurance Co. v. Hart*, 327 Md. 526, 611 A.2d 100 (1992), as cautioning courts against departing from the doctrine of *lex loci contractus*. In *Allstate*, the Maryland Court of Appeals held:

There is a limited exception to the rule of *lex loci contractus* ... when a contractual provision is contrary to Maryland public policy. Nevertheless, for Maryland public policy to override the *lex loci contractus* rule, the public policy must be very strong and not merely a situation in which Mary-

---

**3.** Just recently, the Maryland Court of Special Appeals, while acknowledging that *renvoi* is a recognized exception to the general rule of *lex loci contractus*, declined to apply the doctrine in another insurance coverage dispute. *Commercial Union Insurance Co. v. Porter Hayden Co.*, 96 Md.App. 607, 626 A.2d 979 (1993). In *Commercial Union*, the plaintiff brought a declaratory judgment action to determine the defendant insurer's duty to defend and indemnify the plaintiff in connection with certain asbestos liability lawsuits. The court concluded, without discussion, that the exception was not applicable. *Id.* 626 A.2d at 985 (citing *Travelers Indemnity*, 718 F.Supp. at 1253–54). .

land law is different from the law of another jurisdiction. Moreover, there is a heavy burden on him who urges rejection of foreign law on the ground of public policy. *Id.* at 530, 611 A.2d 100 (citations and internal quotations omitted).[4]

Maryland's highest court has not addressed the issue of whether there is a cause of action for bad-faith failure to pay first party insurance claims. To demonstrate that Maryland has a "strongly voiced public policy" on the issue of bad faith insurance claims, American points to two decisions of the Maryland Court of Special Appeals—*Johnson v. Federal Kemper Ins. Co.*, 74 Md.App. 243, 536 A.2d 1211 (1988) and *Republic Ins. Co. v. Board of County Commissioners of Saint Mary's County*, 68 Md.App. 428, 511 A.2d 1136 (1986)—and a Maryland statute, Md. Ann.Code Art. 48A § 230.

In *Republic Insurance*, the plaintiff sought damages in tort for the defendant's failure to pay promptly the face value of a surety bond. After expressing concern that recognizing a tort action for bad faith might lead to a "boiler plate" averment of bad faith in every contract action, the Court of Special Appeals held that, "a breach of contract does not, *under the circumstances of this case,* give rise to a tort action for 'bad faith.'" 68 Md.App. at 432, 511 A.2d 1136 (emphasis added).

In *Johnson,* the insured attempted to argue that Article 48A § 230A of the Maryland Code created a cause of action for bad faith. The Court of Special Appeal rejected that argument, observing that the statute "provides administrative relief only," and "is not to be construed 'to provide or deprive any private right or cause of action to' any claimant." 74 Md.App. at 248, 536 A.2d 1211 (quoting Md.Ann.Code Art. 48A, § 230A(f)(2)(i)). Although the Court of Special Appeals is undeniably correct that the

statute does not create an independent cause of action for bad faith, this Court cannot agree with American that either the statute, or the *Johnson* decision, expresses a strong public policy against bad faith actions. While the General Assembly made clear in Section 230A that it did not intend to "provide" a cause of action, it also indicated that it did not intend to "deprive" a claimant of a cause of action he or she might otherwise have.

■ The Court concludes that this is "merely a situation in which Maryland law is different from the law of another jurisdiction." *Allstate,* 327 Md. at 530, 611 A.2d 100. Article 48A, Section 230, along with the two intermediate appellate court decisions cited by American, are simply insufficient to demonstrate a public policy strong enough to compel the Court to take the exceptional step of applying the doctrine of *renvoi.* Accordingly, the Court will look to the law of Pennsylvania to determine whether Plaintiff can bring a cause of action for bad faith failure to pay an insurance claim.

## III. BAD FAITH UNDER PENNSYLVANIA LAW

■ It is well settled that there is no action for bad faith failure to pay an insurance claim under the common law of Pennsylvania. *See D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). Eastern, however, argues that Title 42, Section 8371 of the Pennsylvania Consolidated Statutes creates such a cause of action. American counters that Section 8371 is limited to suits involving motor vehicle insurance, and thus, is inapplicable to the instant action.

Section 8371 states:

**Actions on insurance policies**

In an action arising under an insurance policy, if the court finds that the insurer

---

4. The Court notes that this language in *Allstate* concerns not the doctrine of *renvoi,* but a more general public policy exception to the general *lex loci* rule. *See Connecticut Mutual* at *14 n. 5 (noting the distinction between the two doctrines). Under this exception, a Maryland court can refuse to enforce a contract provision if its enforcement would be against Maryland public policy, even though the law of the place of con-

tract would enforce the provision. *See Bethlehem Steel v. G.C. Zarnas & Co.,* 304 Md. 183, 498 A.2d 605 (1985) (collecting cases applying this exception). While acknowledging that this language does not directly address the doctrine of *renvoi,* the Court finds it instructive in clarifying Maryland courts' strong inclination to adhere to the general rule of *lex loci* and the burden faced by those who would urge the Court do otherwise.

has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.Con.Stats.Ann. § 8371.

Initially, the Court notes that there is nothing in the language of Section 8371, or in the manner in which that language was codified,[5] to indicate that the Pennsylvania legislature intended this section's application to be limited to motor vehicle insurance. The Court also notes that, with the exception of the two decisions discussed *infra,* this section has been consistently applied in actions involving a variety of different types of insurance policies. *See, e.g. Albertini Restaurants, Inc. v. Nationwide Mutual Ins. Co.,* Civil Action No. 93-1669, 1993 WL 209583 (E.D.Pa. June 10, 1993) (fire insurance); *MacFarland v. U.S. Fidelity & Guarantee Co.,* 818 F.Supp. 108 (E.D.Pa.1993) (marine insurance); *Margolies v. State Farm Fire & Cas. Co.,* 810 F.Supp. 637 (E.D.Pa.1992) (fire and casualty insurance); *Margolis v. Provident Life & Acc. Ins. Co.,* Civil Action No. 92-3857, 1992 WL 346470 (E.D.Pa. Nov. 16, 1992) (attorney's professional liability insurance); *Polselli v. Nationwide Mut. Fire Ins. Co.,* Civil Action No. 92-382, 1992 WL 247271 (E.D.Pa. Sept. 23, 1992) (homeowner's insurance); *Mabel v. Equitable Life Assur. Soc. of U.S.,* Civil Action No. 92-2721, 1992 WL 151781 (E.D.Pa. June 22, 1992) (life insurance).

To support its view of the narrow application of Section 8371, American cites two unpublished opinions: one from Pennsylvania's intermediate appellate court, *Crabbe v. The Old Republic Ins. Co.,* 426 Pa.Super.Ct. 643, 620 A.2d 1238 (1992); and one from the United States District Court for the Middle District of Pennsylvania, *Beltrami v. Fidelity & Guarantee Ins. Co.,* Civil Action No. 91-0174 (M.D.Pa. Feb. 5, 1993).

In *Crabbe,* the plaintiff raised an allegation of bad faith denial of a worker's compensation claim. After concluding that the exclusivity provision of Pennsylvania's Workmen's Compensation Act bars tort actions for damages caused by an insurer's mishandling of a claim, the Pennsylvania Superior Court opined, in dictum, that Section 8371 was limited to actions on motor vehicle insurance policies. The court reached that conclusion based on the observation that the section was enacted as part of an act entitled "Motor Vehicle Insurance, Pleadings, Operators of Commercial Vehicles" which contained several provisions limited in application to motor vehicles.[6] From that observation, the Superior Court inferred that Section 8371 was enacted in order to address problems in the auto insurance industry. In *Beltrami,* the federal district court judge adopted the reasoning of the *Crabbe* decision.

This Court is not bound by either the *Crabbe*[7] or the *Beltrami* decisions and is not

**5.** Article 42 is the "Judiciary and Judicial Procedure" article. Section 8371 is codified under Part VII—"Civil Actions and Proceedings," Chapter 83—"Particular Rights and Immunities," Subchapter G—"Special Damages."

**6.** Act 1990-6, House Bill No. 121, 2 Pa.Legis.Serv. 8 (Purdons March 1990).

**7.** The Fourth Circuit has observed that, "[o]rdinarily, a federal court should follow the decisions of the intermediate state court of appeals." *Lynch v. Universal Life Church,* 775 F.2d 576, 580 (4th Cir.1985). The weight accorded to the *Crabbe* decision, however, is substantially diminished in that *Crabbe* is an unreported decision. The Pennsylvania Superior Court's own rules expressly state:

An unpublished memorandum decision shall not be relied upon or cited by a Court or a party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited: (1) when it is relevant under the doctrine of law of the case, res judicata or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding.

Pennsylvania Superior Court Internal Operating Procedures § 65.37.

*See also Polselli v. Nationwide Mutual Fire Insur. Co.,* Civil Action No. 91-1365, 1993 WL 137476 (E.D.Pa. April 30, 1993) (declining to

persuaded by their reasoning. It is a fundamental canon of statutory construction that:

> Statutory interpretation always begins (and often ends) with the words of the statute itself. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 [104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694] (1984). If the words convey a clear meaning, courts may not sift through secondary indices of intent to discover alternative meanings.

*United States v. Southern Management Corp.,* 955 F.2d 914, 920 (4th Cir.1992). Furthermore, "[U]nder Pennsylvania's rules of statutory construction, legislative intent controls questions of statutory construction and when the words of a statute are unambiguous, they are to be followed." *Polselli,* 1993 WL 137476 at *9 (citing 1 Pa.Con.Stats.Ann. § 1921).

Here, there is nothing ambiguous about the plain language of the statute: the statute states that it applies "[i]n an action arising under an insurance policy." The legislature's decision to codify this section in the general judicial proceedings article is a further indication that it did not intend to limit it application to motor vehicle policies. Had the legislature wished to so limit this provision, it would have been more likely to have codified this section in Article 75, where other provisions limited to motor vehicle insurance are codified. *See, e.g.,* 75 Pa.Con.Stats.Ann. § 1721 (setting forth the statute of limitations for actions on motor vehicle insurance policies).

Even were the Court to look to extrinsic evidence to ascertain the scope of this provision, an equally persuasive argument can be presented that the statute applies to actions under any type of insurance policy. Regarding the circumstances of its enactment, at least one court has opined that Section 8371 was a legislative response not to a perceived crisis in the motor vehicle insurance industry, but rather to the Pennsylvania Supreme Court's decision in *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co., supra. Danley v. State Farm Mut. Auto. Ins. Co.,* 808 F.Supp. 399, 400 (M.D.Pa. 1992). In *D'Ambrosio,* the Pennsylvania Supreme Court refused to recognize a claim for punitive damages in insurance cases. Section 8371, opined the federal district court in *Danley,* was passed in response to that decision.

Nor does the content of the other provisions of the bill of which Section 8371 was a part compel the conclusion that Section 8371 must be limited to motor vehicle insurance. The portion of the bill immediately preceding Section 8371 is a general provision similar to Rule 11 of the Federal Rules of Civil Procedure. 42 Pa.Con.Stats.Ann. § 8355 (entitled "Certification of pleadings, motions and other papers"). As Eastern points out, it would be ludicrous to argue that, because of Section 8355's inclusion in this bill, the legislature was expressing its intent that Section 8355 apply only to motor vehicle insurance litigation. It is clear to this Court that the bill represented a collection of a variety of provisions, some involving motor vehicles and motor vehicle insurance, but others with more general application.

Based, therefore, on the plain language of the statute, its codification, and the fact that courts have routinely applied it to a variety of different types of insurance contracts, the Court finds that Section 8371 is not limited to motor vehicle insurance disputes. To hold otherwise would require litigants to delve into an obscure legislative history, while ignoring the obvious meaning of the statute.

## IV. CONCLUSION

For the reasons stated above, the Court finds that (1) Pennsylvania law applies to the instant action and (2) Pennsylvania recognizes a cause of action for bad faith failure to pay an insurance claim. Accordingly, Defendant's Motion to Dismiss will be denied. Plaintiff's motion to amend the Complaint to add a count under 42 Pa.Con.Stats.Ann. § 8371 will be granted. A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein,

---

follow *Crabbe* dictum on grounds similar to those set forth herein).

**804**

IT IS this 10th day of August, 1993, by the United States District Court for the District of Maryland, ORDERED:

1. That Plaintiff's Motion for Leave to File a Surreply filed May 11, 1993 (Paper No. 11) is GRANTED;

2. That Defendant's Motion to Dismiss filed March 24, 1993 (Paper No. 4) is DENIED;

3. That Plaintiff's Motion for Leave to File Amended Complaint filed June 28, 1993 (Paper No. 14) is GRANTED; that, pursuant to Local Rule 103.6(a), the amended pleading shall be deemed to have been served, for the purpose of determining the time for response under Fed.R.Civ.P. 15(a), on the date of this Order.