James **RANDI**

v.

**GENERAL INSURANCE COMPANY OF AMERICA.**

No. Civ. L–96–1959.

United States District Court,
D. Maryland.

Feb. 24, 1998.

C. Lamar Garren, Charlottesville, VA, for plaintiff.

David D. Gilliss, Baltimore, MD, Howard A. Wolf–Rodda, Washington, DC, for defendant.

*MEMORANDUM*

LEGG, District Judge.

At all relevant times the plaintiff, James Randi ("Randi") was a professional magician and a member of the Executive Council of the Committee for the Scientific Investigation of Claims of the Paranormal ("CSI-COP"). He has brought this action against the defendant, General Insurance Company of America ("General") to recover attorneys' fees incurred by Randi in the course of a lawsuit filed in 1991 against Randi and CSI-COP by self-proclaimed psychic Uri Geller. Randi claims that he is entitled to relief under the terms of a "Media Special Perils Policy" (the "Policy") issued by Media/Professional Insurance, Inc. ("MPI"), on behalf of General.[1] The parties have filed cross-motions for summary judgment.[2] For the reasons set forth below the Court, by separate Order, shall grant the defendant summary judgment.

**Background**

The essential facts of this case are not in dispute. The April 9, 1991 edition of the International Herald Tribune ("IHT") printed an interview of Randi by journalist Barry James. The interview represented Randi as stating that "Geller tricked even reputable scientists ... because they do not understand conjuring tricks," and that Geller's tricks "are the kind that used to be on the back of cereal boxes when [Randi] was a kid. Apparently scientists don't eat cornflakes any more." Defendant's Exh. 2, Complaint in *Uri Geller v. James Randi, et al.*, Civil No. 91–1014, 1993 wl 179293 (1993) ("Geller's Complaint").

---

1. Randi's Complaint also sought relief in tort and punitive damages. At this stage, however, Randi concedes that those claims are without merit. Accordingly the Court, by separate Order, shall enter summary judgment in favor of the defendant as to Randi's claims in tort and for punitive damages.

2. Having reviewed the submissions of the parties, the Court determines that a hearing is not necessary. Local rule 105.6.

Based on the IHT's publication of these statements, Geller sued Randi and CSICOP for defamation, invasion of privacy (false light) and tortious interference with prospective advantage in the United States District Court for the District of Columbia. *Id.* Initially, Geller's Complaint failed to attribute Randi's conduct to CSICOP. Geller's Amended Complaint, however, alleged that Randi "was acting individually on his own behalf and/or as a duly authorized actual and/or apparent agent, servant, employee and/or representative of [CSICOP]." Defendant's Exh. 2, Geller's Amended Complaint. Geller's suit was eventually settled, and Geller and Randi stipulated to dismissal of all claims between them, with prejudice and without costs to either party. Defendant's Exh. 8, Stipulation for Dismissal.

Prior to these events, General issued to CSICOP and its Executive Council the annual Policy in question, which became effective on January 22, 1991. Defendant's Exh. 1. In the Policy, General agreed to:

". . . pay on behalf of the **Insured all loss** and **claim expense** which the **Insured** shall become legally obligated to pay because of liability imposed by law or **assumed under contract** as a result of one or more claims arising out of:

A.  any form of defamation or . . .

B.  any form of invasion . . . of privacy . . .

committed in the utterance or dissemination of **matter** arising out of an **occurrence** during the policy term . . ." *Id.* at E–2 (emphasis in original).

The policy defined relevant terms as follows:

" 'Insured' means the Named Insured and . . . each person who is a director, officer, stockholder, partner, trustee or employee thereof, but only while acting within the scope of their duties as such . . .

. . . 'Matter' means the printed or pictorial content of scheduled publications, the content of related advertising, and use of such matter by others.

'Occurrence' means:

1.  the publication, distribution or **advertising** of a scheduled publication by or with the permission of the **Insured;**
2.  the gathering or obtaining of **matter** for publication in a **scheduled publication.**"

*Id.* at E–3 (emphasis in original).[3]

In addition, a "New York Amendatory Endorsement" to Policy provided that:

In the event of a claim or suit which may result in the liability of [General] hereunder, the **Insured** shall give notice thereof to [General] as soon as practicable.

The **Insured** will employ counsel approved by [General] for the defense of such **claim** or suit, or may request [General] to defend the **claim** or suit on its behalf, as follows:

a.  If the **Insured** elects to employ counsel:

(1) The **Insured** shall . . . keep [General] informed of all developments and expenses . . .

*Id.* at E–9.

Finally, the Policy stated that "[n]o action shall lie against [General] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy." *Id.* at E–5.

On May 9, 1991 Barry Karr, Executive Director of CSICOP, notified MPI of Geller's suit and submitted to MPI a copy of Geller's Complaint. Defendant's Exh. 4, Letter of Barry Karr to MPI. On May 16, 1991 Chad Milton, Vice President and Assistant General Counsel of MPI, advised Karr that CSICOP's claim would not be covered under the Policy. Defendant's Exh. 6, Letter of Chad F. Milton to Barry Karr. On May 23, 1991 Marianne Hanley, Esq., counsel for CSICOP, advised Milton that, based on Geller's allegations that Randi acted as CSICOP's agent, CSICOP reserved the right to claim coverage under the policy. At the same time, however, Hanley emphasized that it was CSICOP's position that Randi had not acted as CSICOP's agent in the course of the James interview. Defendant's Exh. 7, Letter of Marianne E. Hanley to Chad Milton. At no time did Randi personally notify either

---

**3.** An "Amendatory Endorsement" to the Policy further defined "Matter" to include "the informational content of public speaking engagements including speeches, panel discussions and seminars;" and "Occurrence" to include "public speaking engagements including speeches, panel discussions and seminars." *Id.* at E–8.

General or MPI of Geller's lawsuit, or of Randi's intention to retain counsel in his own defense.

Upon learning of Geller's action, however, Randi did retain William A. McDaniel, Esq., to represent him. Deposition of James Randi ("Randi Dep."), at 80. Following disagreements between the two, as the Geller suit progressed Randi terminated McDaniel and retained Michael Kennedy, Esq., to represent him. *Id.* at 84. The fees paid by Randi to McDaniel and Kennedy are the subject of this lawsuit.

**Discussion**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In Missouri,[4] "[i]nsurance policies are contracts, and the rules of contract construction apply." *Arbeitman v. Monumental Life Insurance Co.,* 878 S.W.2d 915, 916 (Mo.Ct. App.1994). "In construing an insurance policy, the words must be given their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Standard Artificial Limb, Inc. v. Allianz Insurance Co.,* 895 S.W.2d 205, 209 (1995). Thus, "[t]he contract should be construed as a whole; but, insofar as open to different constructions, that most favorable to the insured must be adopted. However ... the rule does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating ambiguity when none exists." *Dieckman v. Moran,* 414 S.W.2d 320, 321 (Mo.1967) (citations omitted).

With respect to an insurer's duty to defend, Missouri law states that:

"[o]rdinarily, the liability insurer's duty to defend is determined from the insurance policy provision and the allegations of the petition filed against the insured ... Nevertheless, a liability insurer's duty to defend does not depend alone upon the allegations of the petition filed against the insured. The actual facts known to the insurer or which should have been reasonably known to the insurer also affect the duty to defend ... If a petition against the insured alleges facts not within the coverage of the insurance policy, no duty devolves upon the insurer to defend ... If additional facts are ascertained which show that the action is not within the coverage of the policy, the insurer is also not obligated to afford a defense."

*Travelers Insurance Co. v. Cole,* 631 S.W.2d 661, 665 (Mo.App.1982) (citations omitted).

■ In this case, Randi cannot show that his interview with James was covered by the Policy. The Named Insured under the Policy was "CSICOP, Inc. and Executive Council." Policy at E–1. In addition, the Policy extended the definition of the term "insured" to cover "each person who is a director, officer, stockholder, partner, trustee or employee [of the Named Insured], but *only while acting within the scope of their duties as such.*" Policy at E–3 (emphasis added).

As a member of the Executive Council, Randi may have come under the purview of the Policy for actions undertaken as CSICOP's agent. Despite the allegations in Geller's Amended Complaint, however, Randi declared under oath that he was not acting "as a duly authorized agent, servant, employee and/or representative of [CSICOP] in [his] interviews with Mr. James." Defendant's Exh. 9, Declaration of James Randi in *Geller v. Randi, et al.* ("Randi Declaration"), ¶ 3. Consequently, the acts for which Geller sued Randi were clearly beyond coverage under the plain terms of the Policy.

■ Randi argues that Geller's allegation that Randi was acting as CSICOP's agent should suffice to cause Randi to be covered by the Policy. Randi claims that General waived the benefit of the provisions of Missouri law entitling insurers to look outside the four corners of the complaint for evidence that the conduct in question was not covered by the Policy. *See Travelers,* 631

---

4. The parties agree that, because the Policy was executed in Kansas City, Missouri, the laws of that state apply to this case. *See Schaefer v. Aetna Life & Casualty Co.,* 910 F.Supp. 1095,

1098 (D.Md.1996); *Eastern Stainless Corp. v. American Protection Insurance Co.,* 829 F.Supp. 797, 799 (D.Md.1993).

**604**

S.W.2d at 665. For support, Randi points to the fact that the Policy defined a covered "claim" as "a demand for money or services, even if any of the allegations of the claim are groundless, false or fraudulent." Policy at E–6.

The Court finds Randi's argument meritless. As General properly observes, nothing in the quoted language could be construed reasonably as General's acceptance of the fact that false or groundless allegations might suffice to turn a stranger to the Policy into an insured. Accordingly, Randi was not an insured, and is therefore not entitled to benefits under the Policy, in connection with the Geller lawsuit.[5]

### Conclusion

For the reasons stated above, the Court, by separate Order, shall grant General summary judgment.

**5.** The parties also disagree over whether Randi would be entitled to relief if the Court had ruled that, for relevant purposes, Randi was an "insured" under the Policy. General argues that, even in such an event, Randi would not be entitled to relief because: (1) Randi's release of an interview to James was not an "occurrence" within the meaning of the Policy; and (2) Randi failed to follow the procedures required by the Policy with regard to notifying General of the Geller lawsuit and obtaining General's approval for counsel retained directly by Randi. In view of the ruling that Randi was not an insured under the Policy, the Court declines to address those issues at this time.

